Raymond Pedrick, et al., Plaintiffs-Appellees, v. The Peoria and Eastern Railroad Company, a Corporation, Defendant-Appellant.

**Gen. No. 64–77.**

Third District.

October 11, 1965.

Rehearing denied November 9, 1965.

Miller, Westervelt & Johnson, of Peoria, for appellant.

Kuhfuss and Railsback, of Pekin, for appellees.

CORYN, J.

This is an appeal by the Peoria & Eastern Railroad Company, defendant, from judgments entered upon jury verdicts in the amounts of $15,000 for Cleo Pedrick and $2,500 for Raymond Pedrick. The causes of action herein arose out of a collision which occurred on December 7, 1960, in Pekin, Illinois, at the intersection of North Fifth Street and the defendant's railroad track. No issues were raised in this appeal on the pleadings or instructions. The defendant's principal contentions on appeal are that the plaintiffs were guilty of contributory negligence as a matter of law, and that the verdicts, and the judgments entered thereon, are contrary to the manifest weight of the evidence.

North Fifth Street, at its intersection with the defendant's railroad tracks, runs in a northerly and southerly direction, and defendant's railroad tracks run in an easterly and westerly direction. There are three sets of tracks at this intersection. The crossing is level and is protected by electrically operated flasher signals. Both plaintiffs charged that the defendant negligently failed to operate said flasher lights, and to flash any signal from said flasher lights to the plaintiffs warning them that defendant's train was approaching the intersection.

The record indicates that at approximately 5:50 p. m. on December 7, 1960, plaintiff, Raymond Pedrick, was operating his motor vehicle in a northerly direction and was approaching defendant's railroad crossing. His wife, Cleo Pedrick, also a plaintiff herein, was seated in the right hand side of the front seat. Hazel Lindsey, a sister of Mrs. Pedrick, was seated in the middle of the back seat. The weather was clear, and visibility was good, although it was dark. Raymond Pedrick's automobile was approaching the crossing

119

from the south, and defendant's train was approaching the intersection from the west, traveling in an easterly direction on the most southerly of the three tracks at this crossing. On the southwesterly corner of the intersection there is a one-story A. & P. store. Electrically operated flasher signals are located at the southeast and northwest corners of the intersection, each flasher signal consisting of two lamps 8¾ inches in diameter. When operating, the two lamps on each flasher signal light alternately back and forth. A motorist approaching the intersection would face four flasher lights, two on the north side of the intersection and two on the south side of the intersection. Attached to the flasher light standards are reflectorized signs which carry the words, "Three Tracks," and "Stop On Red." On each side of the intersection is a cross arm signal painted white, containing the words, "Railroad Crossing." A motorist approaching this crossing from the south, as was the plaintiffs' vehicle, when 50 feet from the intersection, has a clear view of a train approaching from the west within a distance of 75 feet. As a motorist gets closer to the crossing, his view to the left becomes greater, so that when he gets to within 15 feet from the crossing, his view to the left is totally unobstructed.

The defendant's train crew testified that the train consisted of a diesel engine and 19 cars; that the head lights were on and that the bell and whistle had been operating continuously for some distance right up to the time of impact; that the train was traveling between 10 and 15 miles per hour just prior to the impact; and that it stopped within 100 feet beyond the point of impact. Train engineer, Wilbur H. Grant, testified that he first saw the Pedrick automobile enter the crossing when the front of the train engine was approaching and about 10 feet from the crossing, and that upon seeing the Pedrick vehicle, he immediately

applied the train's emergency brakes. All members of the defendant's train crew testified that the flasher lights at the crossing were operating in a normal manner, both before and after the collision. Loren McKee, defendant's signal maintainer, testified that he tested the flasher lights at the Fifth Street crossing on November 28, 1960, at 9:45 a. m., and again on December 7, 1960, at 8:25 p. m., shortly after the accident with the Pedrick vehicle, and in both instances found that the flashing lights were working properly.

Thomas Lee Faichney, an employee of Peoria & Pekin Union Railway Company, the defendant, testified that just prior to the collision, he was operating his automobile in a southerly direction on Fifth Street. Faichney stated that he saw the red flasher lights at the crossing go on when he was about two and one-half to three blocks away, and that when he got to the crossing, he stopped as he heard the bell and whistle of the train and observed its headlights. Faichney testified that he saw the Pedrick vehicle approaching him from the south when the Pedrick vehicle was about a half a block from the railroad crossing, and that it did not appear to slow down before it collided with the train.

John Thomas Lowman, an insurance broker with offices in downtown Pekin, testified that on the date of the accident he left his office to go home, and that as he stopped for a stop sign at the intersection of Ann Eliza Street and Fifth Street, he observed the Pedrick automobile traveling north on Fifth Street. Lowman then turned left, or north, onto Fifth Street, and was then two or three car lengths behind the Pedrick automobile. As Lowman was stopped at said stop sign, or as he proceeded to make his left hand turn, he observed that the red flasher signals were operating at the Fifth Street crossing, which was approximately 200 feet away. Lowman testified that he was traveling

between 15 and 20 miles an hour as he followed the Pedrick vehicle north toward the railroad crossing; that he followed this car all the way up to the time of the collision; and that he did not observe the Pedrick car slow down at any time prior to the collision. Lowman stated that he saw the engine of the defendant's train approaching the Fifth Street crossing prior to the collision, and that the headlights of the train were operating, and that he heard a whistle or horn from the train.

Hazel Lindsey, called as a witness by the plaintiffs, testified that she presently has a personal injury suit pending against the defendant for injuries incurred as a result of the same accident. Mrs. Lindsey stated that she was a passenger in the Pedrick automobile and was sitting in the middle of the back seat, and that she was sure that as the Pedrick vehicle approached the railroad crossing, she saw no flasher lights operating and saw no train and heard no whistle. She admitted that in an earlier deposition she had stated that she didn't know whether or not she had heard a whistle.

Cleo Pedrick, plaintiff, testified that she was 58 years old at the time of the accident, and that her hearing and eyesight were good. Mrs. Pedrick further testified that she was riding as a passenger in the automobile being driven by her husband, and that she was seated in the right front seat. Mrs. Pedrick stated that she had been over this crossing 50 to 75 times, many of these times at night. Mrs. Pedrick testified that she realized they were approaching the railroad crossing, and as the car crossed Ann Eliza Street, which would be approximately 200 feet from the railroad tracks, she saw the cross arms that said, "Railroad Crossing," because the lights of the car in which she was riding flashed on this sign. She then said to the occupants of her car, "Up and down here is a railroad

track." A few seconds later Mrs. Pedrick heard the train and stated to the other people in the car, "I hear a train." This statement was made when the Pedrick vehicle was at least 100 feet from the railroad tracks, according to Mrs. Pedrick. Mrs. Pedrick further testified that she heard the train's whistle after the car got closer than 100 feet to the tracks, and that the train was still whistling when it hit the car. Mrs. Pedrick stated that she never saw any flasher lights operating prior to the collision, nor did she see a headlight on the train. She stated that her husband slowed down when she mentioned the fact that a railroad crossing was ahead, and that he further slowed down when she mentioned that she heard a train. Mrs. Pedrick did not notice whether there were any lights at all at the railroad crossing, nor did she notice whether there were any lights in the A. & P. store or in any of the other buildings at the intersection. Also, Mrs. Pedrick did not see any automobile approaching from the north on Fifth Street, and she did not know whether or not a car was following her vehicle.

Raymond Pedrick, plaintiff, testified that he was driving a 1955 Chevrolet at the time of the accident. He stated he had been over the railroad crossing on a number of occasions, at least 30 times, and that the headlights of his car were on and that he had no trouble seeing ahead. The window next to him in the car was down and open at the time. Mr. Pedrick's attention was called to the fact that a railroad track was ahead when his wife stated, "Right down here is a railroad track." At that time the Pedrick vehicle was about 200 feet away from the tracks. Mr. Pedrick stated that after his wife made said statement, he slowed down to about 15 to 20 miles an hour. When the Pedrick vehicle was about 100 feet from the track, his wife said she heard a train whistle, and Pedrick stated he then slowed the vehicle down to 5 to 10 miles

an hour, and said that at the time of the impact he was going slow enough so that he could have stopped in four or five feet. Pedrick was asked on direct examination: "Do you know, Mr. Pedrick, whether the railroad lights were on at the time of the collision. I mean the flasher lights?" To this inquiry he responded: "No, I wouldn't know." At another time in his testimony he stated that the flashers were off. He testified that he saw no car approaching him from the north and did not notice any car following him from the rear. He did not see the headlight on the engine, and stated that he was about 12 feet from the tracks when he first looked to the left to see if the train was approaching. He stated that he first saw the train engine when it was only "two or three inches from [him]." He did not look to see if the flasher signals were working when he got out of the car after the accident.

 Persons approaching a railroad crossing are charged with the knowledge that a railroad crossing is a place of known danger, and it is their duty to exercise such care as is commensurate with the known danger. Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 631, 164 NE 142. They must not go recklessly on the track, but must first look and listen for possible danger, and such persons are charged with the duty of seeing and hearing whatever would be visible and audible to a person in the exercise of due care. Holt v. Illinois Cent. R. Co., 318 Ill App 436, 444, 48 NE2d 446. "One who has an unobstructed view of the approaching train is not justified in closing his eyes in crossing a railroad track in reliance upon the presumption that a bell would be rung or a whistle sounded, and offer the presumption as an excuse for not exercising care. . . . Likewise it is clear that if the view of the crossing is obscured, and the location of the crossing is known to the traveler, it is his duty to

approach the crossing with the amount of care commensurate with the situation as it exists. The claim that care and caution by any person has been exercised cannot be sustained, when the known facts disclose that ordinary care would have avoided the accident." Moudy v. New York, C. & St. R. Co., 385 Ill 446, 452, 53 NE2d 406 (also cited as Moudy v. New York Cent. R. Co.). A passenger riding in an automobile must exercise due care for his own safety, and if he has an opportunity of learning of approaching danger, and has the opportunity to avoid said danger, he must warn the driver of such danger. Such passenger, merely because someone else is driving the car, has no right to omit prudent efforts on his part to avoid danger. Dee v. City of Peru, 343 Ill 36, 42, 174 NE 901; Mabel v. Cleveland, C., C. & St. L. R. Co., 264 Ill App 532, 536; and Price v. Chicago & E. I. Ry. Co., 270 Ill App 111, 116. Both the driver and passenger have the burden of proving that they were in the exercise of due care and caution for their own safety at the time of the accident. Illinois Cent. R. Co. v. Oswald, 338 Ill 270, 274, 170 NE 247; Jines v. Greyhound Corp., 46 Ill App2d 364, 372, 197 NE2d 58. Also, the plaintiff, in an action for injuries sustained in an accident at a railroad crossing, is required to prove the essential elements of his case by a preponderance or greater weight of the evidence. Chester v. Chicago, B. & Q. R. Co., 247 Ill App 505, 512. It is the duty of the Appellate Court to set aside a verdict when satisfied that the verdict is against the manifest weight of the evidence, and that an opposite conclusion is clearly evident. Piper v. Lamb, 27 Ill App2d 99, 112, 169 NE2d 164; Cardona v. Toczydlowski, 35 Ill App2d 11, 21, 180 NE2d 709; Mullen v. Chicago Transit Authority, 33 Ill App2d 103, 111, 178 NE2d 670.

 We have carefully reviewed the record herein and we have concluded that the verdicts are contrary

to the manifest weight of the evidence. All the direct, positive and unequivocal testimony presented on the issue of whether the defendant failed to operate its flasher signals, the sole allegation of defendant's negligence in this case, indicates that the flasher signals were properly operating at the time. The testimony of John Thomas Lowman, which must be accorded great significance because he was a totally disinterested witness, is that he followed two or three car lengths behind the Pedrick vehicle from the intersection of Ann Eliza Street and Fifth Street, some 200 feet from the railroad crossing. Also, Lowman testified that he saw the engine of defendant's train approaching the crossing prior to the collision, and that its headlights were on and its whistle was sounding. Thomas Lee Faichney, driving on Fifth Street toward the Pedrick and Lowman vehicles, gave essentially the same testimony, especially as to the operation of the flasher signals, train headlights and whistle. The train crew and the signal maintainer testified that the flasher signals were operating before, at the time of, and after the collision. A close scrutiny of the testimony of the occupants of the Pedrick automobile demonstrates that it is confined to the issue of what they failed to observe. Their testimony does not reasonably and fairly, either directly or by honest inferences, contradict the positive and unequivocal assertions of defendant's crew, corroborated by an independent witness, and by the favorable inferences arising from the uncontradicted testimony of Loren McKee, the signal maintainer, that the flasher signal was operating. It is clearly evident that the preponderance of the evidence supports the conclusion that the flasher signals were operating at the time of the collision.

In addition, we note that the evidence of the conduct of Raymond Pedrick establishes that his negligence was the sole cause of the collision. He admit-

126

tedly had knowledge of the existence of the danger, i. e. the crossing, and of the warning whistle, and stated that he could have stopped the car in four or five feet, but never did so. The uncontradicted evidence is that any motorist approaching the crossing from the south would have an unobstructed view of a train approaching from the west when the motor vehicle was fifteen feet from the crossing. The only reasonable inference to be drawn, then, from the fact that Pedrick failed to yield the right-of-way to defendant's train, is that he did not heed the previous warning of the train whistle, or look to his left when he approached the southern most track. Clearly, ordinary care on his part would have avoided the accident.

For the reasons stated herein, we are of the opinion that the judgments should be reversed, but that it would serve no useful purpose to remand the case for a new trial as undoubtedly the evidence would be the same. Accordingly, the judgments of the Circuit Court of Tazewell County in favor of plaintiffs, Raymond Pedrick and Cleo Pedrick, and against the defendant, Peoria and Eastern Railroad Company, are reversed without remanding the causes for a new trial.

Reversed.

ALLOY, P. J. and STOUDER, J., concur.