DENNIS L. LASSWELL, Plaintiff-Appellee, *v.* TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Defendant-Appellant.

Third District No. 75-256

Opinion filed August 23, 1976.

Cassidy, Cassidy & Mueller, of Peoria (David B. Mueller, of counsel), for appellant.

Crissey, Kost & Downs, of Lewistown (Lachlan Crissey, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Dennis Lasswell brought this action in the Circuit Court of Fulton County to recover for personal injuries and property damage sustained when his automobile was struck by a Toledo, Peoria and Western Railroad Company train at defendant's crossing on a township gravel road west of Cuba, Illinois. Defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence were denied. After the jury returned a verdict in favor of plaintiff in the amount of $35,000, and made a special finding that plaintiff was free from contributory negligence, judgment was entered on the verdict. Defendant's post-trial motions for a judgment notwithstanding the verdict and for a new trial were denied, and defendant appeals.

Plaintiff's automobile was struck by defendant's train on the right rear fender as he was crossing a single east-west track while proceeding south. The gasoline tank of plaintiff's car exploded at impact, and plaintiff escaped from the burning wreck. Mr. and Mrs. Clair LeFary, who were approaching the crossing from the south, saw the collision and helped extinguish plaintiff's burning clothes and hair and then transported him to a hospital. He suffered third degree burns over 43 percent of his body, but at the time of trial, had recovered except for the residual effects of skin grafts and scars.

Plaintiff testified that he was on his way home from Cuba about 7 p.m. in daylight, and the weather was clear and dry. He traveled this route

frequently, and was familiar with the railroad crossing. He was driving his 1970 Chevrolet Nova SS in second gear on the rough gravel road, traveling about 20 to 25 m.p.h. as he approached the railroad tracks. His vision to his right (westerly) was obscured first by corn 6 or 7 feet tall until he was within 40 feet of the track, and then by brush and weeds 4 to 5 feet tall, growing in the railroad right-of-way from the corn up to the gravel ballast by the rails. About 30 or 40 feet from the rails, he shifted down, slowed to a speed of 10 to 15 miles per hour, and, when he was 15 feet from the track, he looked both to his left and to his right. Because of the weeds, he could see only 25 or 30 feet down the track to his right and saw no train coming from either direction. He also heard no bell or horn. Looking at the road ahead, he proceeded across the track, and the collision occurred when he was almost across.

Mr. and Mrs. LeFary, disinterested eyewitnesses, had an unobstructed view of both the train and plaintiff's car as they approached the crossing from the opposite direction. Mr. LeFary testified for plaintiff that the weeds growing in the right-of-way were 3 or 4 feet tall and that, the next day, as he drove over the same road, he noticed that his view to the west was obstructed until he was one car length from the track. At that point he could see one-fourth to one-half mile to his right. He stated on cross-examination that, if plaintiff had looked to the west when he was a car length from the track, he would have had to see the train approaching, but considering the speed of the train and of plaintiff's car, he would not have been able to stop in time to avoid a collision. LeFary also admitted on cross-examination that it appeared that plaintiff did not slow down or look in the direction of the train as he neared the crossing. Neither Mr. nor Mrs. LeFary heard a horn or bell sound.

The train engineer testified that the train was traveling 45 miles per hour and that he sounded the horn and rang the bell continuously as he approached the crossing. Because he was sitting on the south side of the engine, he did not see plaintiff's car until the collision occurred. He estimated the weeds on the north side of the track to have been 10 inches high. Both the conductor and the brakeman of the train examined the approaches to the crossing shortly after the accident and testified that the weeds were about knee-length, that is, 18 inches high. An investigating State policeman also examined the scene and testified that he saw no obstructions to plaintiff's view of the track.

Defendant introduced into evidence a photograph taken 11 days after the accident which was offered for the purpose of showing plaintiff's view to the right when he was about 50 feet from the track. The photograph shows a fairly clear view of the track over the top of uncut grass and weeds as far as a large bush or tree growing along a fence line and located 150 feet west of the road on defendant's plat of the scene. Defendant's

conductor, brakeman, and accident investigator testified that the photograph was an accurate portrayal of the scene and of the foliage on the day of the accident. The photographer testified that he saw no cut weeds and nothing to indicate that the weeds had been cut, sprayed or burned or were otherwise than in a natural condition. He also testified that he took the picture with his camera placed 48″ from the ground which would be the eye-level view of a person of average height in an average car.

Called as rebuttal witnesses, Mr. and Mrs. LeFary testified that they had noticed cut weeds and improved visibility at the crossing about one week after the accident, and the weeds along the road were taller on the day of the collision than they appeared in the photograph.

We have described the evidence in detail because defendant contends that this case closely resembles the now-famous decision in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, and that a judgment *n.o.v.* should be entered. In *Pedrick*, the question of negligence turned primarily upon whether the railroad's warning flashers were working when Pedrick drove his car onto railroad tracks and was struck by a train. Both Mr. and Mrs. Pedrick and their passenger testified that they did not see the flashers operating. Seven witnesses, including five railroad employees and two disinterested eyewitnesses, stated that they saw the flasher lights working. The supreme court concluded that the testimony by plaintiff's witnesses was not substantial evidence when the proof was viewed as a whole and that a jury verdict based on that evidence could never stand. Accordingly, the court held that defendant's motion for a directed verdict at the close of all the evidence should have been allowed.

■■ Defendant relies upon those cases holding that a court cannot give credence to a plaintiff who says he looked and did not see an approaching train when, had he looked, he would have seen it. (*E.g., Tucker v. New York, Chicago & St. Louis R.R. Co.* (1958), 12 Ill. 2d 532, 147 N.E.2d 376; *Pedrick v. Peoria & Eastern R.R. Co.* (3d Dist. 1965), 63 Ill. App. 2d 117, 211 N.E.2d 134.) We agree with this principle, but, as was noted in *Tucker*, the court must also consider whether there was any obstruction to view which would render plausible plaintiff's assertion that he looked but did not see the train. *Baker v. Norfolk & Western Ry. Co.* (5th Dist. 1970), 120 Ill. App. 2d 296, 256 N.E.2d 886.

Defendant argues that here plaintiff's testimony that the weeds obstructed his view of the defendant's track was not worthy of belief when compared with the evidence of Mr. LeFary, the police officer, the railroad employees, and the photograph.

The question is whether, viewing the evidence in the aspect most favorable to plaintiff, there is a factual dispute of some substance as to

whether plaintiff's view was obstructed. Plaintiff argues that his car was a low sports car with bucket seats, and from his position the view of the tracks was obstructed to a greater extent than that of the policeman, the conductor and the brakeman who examined the scene on foot, and that of Mr. LeFary who drove a standard-sized car. Furthermore, the photograph was taken from a higher position than that of plaintiff seated in his car.

In *Pedrick*, plaintiff's evidence was negative—that he and his witnesses failed to see what others saw—and both the appellate and supreme courts found that evidence to be incredible when contradicted by positive evidence of seven other witnesses. Unlike the plaintiff's evidence in *Pedrick*, plaintiff's testimony here consisted of positive and unequivocal assertions that the weeds obstructed his view. His testimony as to the height of the weeds was corroborated somewhat by Mr. LeFary who was not a party to this suit, and defendant's photograph of the scene shows a clump of tall weeds near the base of the crossbuck warning sign which was 15 feet north of the track. These weeds could have momentarily obscured the view of a driver who looked to his right at that point. Thus we cannot reject as insubstantial plaintiff's testimony that his view was obstructed.

Defendant also contends that, even accepting plaintiff's version of the obstruction, he was nevertheless contributorily negligent as a matter of law. Assuming for purposes of argument that the weeds growing in defendant's right-of-way did prevent plaintiff from seeing more than 25 or 30 feet down the track to his right when he was 15 feet from the tracks, defendant says plaintiff then had a duty to stop, look and listen before traversing the tracks. This argument relies upon *Bachman v. Illinois Central R.R. Co.* (4th Dist. 1971), 132 Ill. App. 2d 277, 268 N.E.2d 42, where plaintiff ran into a moving train which was passing on a rural crossing marked only by a crossbuck sign. The accident occurred on a foggy night. Plaintiff was familiar with the crossing, was driving 45 to 50 miles per hour, and did not apply his brakes until he was 97 feet from the crossing when the moving train first became visible. Noting that railroad crossings are places of danger, and in crossing them a person must approach the tracks with a degree of care proportionate to the known danger, the court held that the record lacked evidence of due care and therefore plaintiff was negligent as a matter of law. See also *Moudy v. New York, Chicago & St. Louis R.R. Co.* (1944), 385 Ill. 446, 53 N.E.2d 406, but see *Petricek v. Elgin, J. & E. Ry. Co.* (1st Dist. 1959), 21 Ill. App. 2d 60, 157 N.E.2d 421.

In a recent railroad crossing case, the Illinois Supreme Court found the driver contributorily negligent as a matter of law where the evidence

showed that he did not apply his brakes or stop in the crossing zone and did not turn his head to look for approaching trains, and that the horn of the train sounded and a wig-wag signal was operating before the driver started across the tracks. *Coleman v. Illinois Central R.R. Co.* (1974), 59 Ill. 2d 13, 17, 319 N.E.2d 228, 231. The court set out the following general principles:

> "Ordinarily a person traversing a crossing without stopping to look and listen for approaching trains is, as a matter of law, contributorily negligent. However, where the view is obstructed or where the plaintiff is distracted or misled without his fault, his failure to look or listen may be excused. In such instances, it is for the finder of fact to determine whether he acted prudently."

The court then noted thet the driver's view of the train was unobstructed from the time he was 20 or 25 feet from the track and that, had he looked, he would have seen the train. The court found, not only an absence of evidence of due care, but also affirmative evidence of a lack of due care in not looking south but looking straight ahead and in not heeding the plainly audible horn and the plainly visible wig-wag signal.

■■ In the case before us, the witnesses did not agree that the train's warning horn and bell sounded or that weeds obstructed plaintiff's view. If the jury believed that no warning was sounded and that the weeds were an obstruction, the question remaining is whether, as a matter of law, under the standard of ordinary care, plaintiff was required to come to a complete stop or at least to look again to his right as he drove nearer to the track after seeing that his view was obstructed 15 feet from the track.

In *Baker v. Norfolk & Western Ry. Co.*, the court observed that, while a driver must look in both directions, he is not required to keep a continuous lookout in the direction from which the train is coming. In *Baker*, the court quoted Justice Cardozo in *Pokora v. Wabash Ry. Co.*, 292 U.S. 98, 105-06, 78 L. Ed. 1149, 1154, 54 S. Ct. 580, 583, as follows:

> "Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law. * * * In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of a jury."

We believe the question of what a reasonably prudent person would do for his own safety under the circumstances confronting plaintiff here was a question properly submitted to the jury. (Accord, *Gills v. New York, Chicago & St. Louis R.R. Co.* (1930), 342 Ill. 455, 174 N.E. 523.) Hence, we conclude that the trial court did not err in refusing to direct a verdict for defendant. However, because of errors occurring during the trial, defendant is entitled to a new trial.

■■ Over defendant's objection, the trial court instructed the jury as to the statutory duty of railroads to maintain their crossings and approaches within their rights-of-way "so that at all times they shall be safe as to persons and property." This instruction quoted section 8 of the Railroad Act (Ill. Rev. Stat. 1971, ch. 114, par. 62) but did not incorporate the judicial modification construing the word "safe," as used in this section, to mean "reasonably safe." In *McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d 459, 227 N.E.2d 764, one of the grounds for granting a new trial was the giving of this instruction without including the judicial modification. The supreme court agreed with the trial court's determination that the instruction created a misapprehension in the minds of the jurors as to the duty owed by defendant under the law which affected their verdict. Although reviewing courts have been reluctant to reverse solely on the basis of the failure to say "reasonably safe" in this instruction (see, *e.g., Schott v. Atchison, Topeka, & Santa Fe R.R. Co.* (1st Dist. 1968), 91 Ill. App. 2d 135, 234 N.E.2d 414; *McElligott v. Illinois Central R.R. Co.* (5th Dist. 1966), 74 Ill. App. 2d 121, 219 N.E.2d 785; *Corlett v. Illinois Central R.R. Co.* (2d Dist. 1926), 241 Ill. App. 124), we believe the supreme court has recognized the misleading effect of the instruction in the form given here. (See IPI-Civil No. 60.01 (Comment).) We have reviewed the other instructions given and find nothing which would clarify the degree of safety required of the railroad.

Here, as in *McElligott*, the case was close on its facts. The jury not only had to choose between conflicting versions of what conditions existed, but also had to determine the appropriate standard of care which both plaintiff and defendant were bound to use. Under these circumstances, the erroneous statement of defendant's duty cannot be considered harmless error.

Defendant also finds fault with two statements made by plaintiff's counsel during closing argument and with other conduct of plaintiff's counsel during the questioning of witnesses. Near the beginning of his argument, counsel stated:

> "We would not be here today if we didn't feel that our evidence is such as to meet that burden because, as you all know from just being around here on jury calls, a large, large, percentage of the cases that are filed are settled. We don't actually go this far in a trial unless we feel we have a case that is good enough to submit to you on the evidence for your consideration."

■■ The trial judge sustained defendant's objection but declined to declare a mistrial when defendant argued that this statement clearly implied that defendant had offered to compromise or settle plaintiff's claim. Evidence of offers of compromise are not admissible (Hunter, Trial Handbook for Illinois Lawyers §69:19 (1972)), and no such evidence

was before the jury here. We agree with defendant that plaintiff's statement was improper and prejudicial. *Cf. Hansel v. Chicago Transit Authority* (1st Dist. 1971), 132 Ill. App. 2d 402, 270 N.E.2d 553.

■■ In rebuttal argument, plaintiff's attorney discussed the testimony of the State police officer and stated, "He didn't issue anybody any tickets." After the court sustained defendant's objection to that statement, plaintiff's counsel repeated, "And he didn't give anybody any tickets." The court again sustained an objection and instructed the jury, "Disregard that part." Attorney for plaintiff then continued, "But he made his memorandum there and that is all he did." No evidence as to nonissuance of a ticket had been introduced, and thus plaintiff's counsel improperly attempted to supply the jury with facts not admitted into evidence. See *O'Boyle v. Greco Excavating Co.* (1st Dist. 1973), 9 Ill. App. 3d 234, 240, 292 N.E.2d 90.

■■ Throughout the trial, plaintiff's attorney continued to repeat questions after defendant's objection to the question had been sustained. Whether counsel's conduct was intended to circumvent the rules of evidence and thwart the orderly administration of justice, or whether counsel was merely overzealous in pursuing plaintiff's claim, it is apparent the procedural rules governing the trial of cases were ignored.

After carefully reviewing the entire record, we find that the cumulative effect of the erroneous instruction and improper closing argument resulted in substantial prejudice to defendant in this case where the question of liability was not clear cut. Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.