*In re* MARRIAGE OF SUSAN LYNN POOL, Petitioner-Appellant, and GENE BRADLEY POOL, Respondent-Appellee.

Third District    No. 82—756

Opinion filed October 31, 1983.

Gregory K. McClintock, of Stansell, Critser & Whitman, of Monmouth, for appellant.

Barry M. Barash, of Barash, Stoerzbach & Henson, of Galesburg, for appellee.

JUSTICE MILLS delivered the opinion of the court:
A question of custody.
*Joint* legal custody in mother and father.
*Physical* custody in father.
We affirm in part; reverse in part and remand.

### FACTS
The facts may be stated concisely.

Susan and Gene Pool had two children, Chad and Nicholas, born to their marriage. The couple separated on April 24, 1981, and on May 13, 1981, Susan filed for dissolution. Since the case was contested, the court, in accordance with section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1981, ch. 40, par. 403(e)), tried the case on a bifurcated basis. After a brief hearing on January 28, 1982, the court entered a judgment of dissolution of marriage and set the trial of the remaining issues for March 30, 1982. On February 23, 1982, the court appointed Craig Pierce, attorney at law, as guardian *ad litem* and legal representative for the children and requested Courtney Cox, a juvenile probation officer, to conduct an investigation in the case. The actual trial of the remaining

issues was had on May 13, 1982. Testimony was taken regarding both property division and child custody. (No question is raised here concerning the property settlement.)

The testimony of the witnesses was unremarkable. The various witnesses generally felt that both parties were good and caring parents but each expressed his or her own opinion that the sponsoring party would be a better choice for ultimate custody of the children. There were brief references to some acrimony between the parties but nothing of a very serious nature.

Following the taking of testimony, Mr. and Mrs. Pool's attorneys and the children's guardian *ad litem* made closing arguments. Although no recommendation was requested by the court, the guardian *ad litem*, relying on his independent investigation of the case, recommended that the children be placed with their father.

The trial court announced its decision on June 23, 1982. The decision awarded *legal custody* of the children to the parties *jointly*, with physical custody in the father. Mrs. Pool brings this appeal seeking to have the decision of the trial court overturned.

We reverse and remand the case to the trial court for reconsideration in light of our opinion.

Mrs. Pool makes two points concerning the joint custody arrangement decreed by the trial court. She also argues that the guardian *ad litem's* recommendation was improper. She first urges that it was an abuse of discretion to place the children in the custody of their parents jointly since such arrangements are appropriate only under certain circumstances which are lacking here. Her second point is that the decision of the trial court to place the children in the physical custody of the father was against the manifest weight of the evidence.

I

As to the first point we agree that, based on the facts of this case, it was an abuse of discretion to award custody of the children to the parties jointly. Few concepts in the area of family law have met with more widely voiced derision than that of "joint custody." An oxymoron, "joint custody" is a term that is so susceptible to varying meanings that it defies definition. In the case before the court, the order signed by the trial judge placed Chad and Nicholas into their father's home and then ordered that all decisions involving the children's primary and secondary education, extracurricular activities, religious education, college and postgraduate education, discipline, health, companions and playmates, spending habits and allowances, entertainment modes, bedtime and curfew, social activities,

selection of clothing, driving privileges (including the use of motorcycles, motorboats and airplanes), consumption of alcohol and other chemical substances, employment, travel, participation in hazardous activities, and matters of personal appearance be made by both parties jointly. Such an arrangement was strongly criticized in *In re Marriage of Manuele* (1982), 107 Ill. App. 3d 1090, 438 N.E.2d 691, which we deem controlling precedent here. Recognizing that the experience of other jurisdictions had demonstrated the general unworkability of this Utopian scheme, the *Manuele* court stated that such orders would be discouraged and should be used only where both parents have displayed an "unusual capacity to cooperate." (107 Ill. App. 3d 1090, 1095, 438 N.E.2d 691, 694.) Such is not the case here. Both parents sought absolute custody of both children throughout the entire trial. There was testimony regarding noncooperation and discord during the period of separation and trial. Under these circumstances we find that the trial court abused its discretion in making a joint custodial award and reverse its decision with instructions to place the children with one parent, subject to visitation by the other.

■ We note in passing that the legislature has seen fit to amend the IMDMA to make joint custody awards appropriate only where it is in the best interest of the child *and* both parties agree to the arrangement. (Ill. Rev. Stat., 1982 Supp., ch. 40, par. 603.1.) At trial there was some confusion as to the applicability of this statute as amended and a collateral question is raised here concerning its possible unconstitutionality. At this point we digress to address these matters.

■ Joint custody was ordered on June 23, 1982. The judgment reflecting the order was filed on July 13, 1982. Section 603.1 of the IMDMA as amended became effective on September 17, 1982. Mrs. Pool's post-trial motion urging that joint custody award as error was heard on September 28, 1982. At this hearing the attorneys for both husband and wife referred to the amended act but were uncertain of its status. In their briefs before this court, both parties seem to assume that the section as amended will control the disposition of this case. However, at the time the trial court entered its final order, the statute was not in effect, so it would have been error to apply it. As such, the trial court was correct in not doing so. In response to Mrs. Pool's argument that the statute as amended should control this case, Mr. Pool has raised its potential unconstitutionality for the first time on appeal. Since this argument was not raised by objection at trial—or passed upon by the trial court—it is waived for purposes of this appeal and we do not consider it here. *People v. Williams* (1977), 66 Ill.

2d 179, 361 N.E.2d 1110.

## II

That brief digression over, we turn now to Mrs. Pool's other contention regarding the custody decree, namely that the decision to place the physical custody of the children with the father was an abuse of the trial court's discretion as against the manifest weight of the evidence. The trial court heard extensive testimony from witnesses regarding the relationships between the children and their parents. Mr. Pool was a farmer who often worked long days in the field. Mrs. Pool was a part-time university student who enjoyed sports. She had remarried during the course of the trial and had a new stepson. Most of the witnesses agreed that she had the primary responsibility for the children during her marriage to Mr. Pool. The various character witnesses offered by each parent predictably opined that the sponsoring party was best suited to raise the children. The juvenile probation officer who had been ordered to investigate the matter was unable to express an opinion as to which parent should retain physical custody of the children. The attorney and guardian *ad litem* representing the children recommended that they be placed with their father, after indicating that he could not wholeheartedly recommend one parent over the other. The trial judge candidly admitted that the case was a close one.

■■ ■ In this area of the law there are few principles but there is an overriding presumption. The trial court, as the party closest to the litigation and with the best opportunity to observe and decide, is presumed to have made the correct placement decision. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) The presumption is both strong and compelling, and absent a clear abuse of discretion will not be overturned. Numerous cases repeat this old saw. (See, *e.g., In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092 (trial court decision will not be disturbed unless manifest injustice has been done); *In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 408 N.E.2d 1139 (trial court in best position to judge the credibility of the witnesses and the needs of the children); *In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 418 N.E.2d 947 (custodial decision rests on temperaments, personalities and capabilities with the trial judge in the best position to evaluate the factors).) The lower court's decision was based on the evidence which was close but nonetheless clearly favored neither party. As such, the decision to place the children with the father should be upheld as not against the manifest weight of the evidence.

■ The mother specifically argues that the decision was contrary to the evidence as it related to the stability of the home environment which would be provided by the father since he was a farmer and often worked long days. Stability of the home environment is a judicial gloss added to the factors specifically enumerated in section 602(a) of the IMDMA. (Ill. Rev. Stat. 1981, ch. 40, par. 602(a); *People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 354 N.E.2d 562.) Close examination of the cases dealing with "stability" reveal the mother is now hoist on her own petard as these cases are uniformly ones where an appellate court has refused to overturn a lower court custody decree due to the unsettling effects such a disruption might have on the children. In the case at bar, the mother was arguing that it was improper for the trial court to remove the children from her custody since they had been with her during the prior separation, but that now—long after the trial—the appellate court should again transplant them and again upset their lives.

### III

■ The final issue we address is whether the attorney who was serving in the dual capacity of guardian *ad litem* and legal representative for the children pursuant to section 506 of IMDMA (Ill. Rev. Stat. 1981, ch. 40, par. 506) improperly based his custody recommendation on independent interviews with persons who did not testify at the trial. We conclude that such behavior was improper and should not be sanctioned. While divorce proceedings deal directly with the social fabric of life, they are nonetheless judicial proceedings and must be governed by the rules of procedure of courts of law. The attorney's actions here are objectionable on two grounds. First, the attorney based his closing argument on facts not admitted into evidence which is error (*Lasswell v. Toledo, Peoria & Western R.R. Co.* (1976), 41 Ill. App. 3d 568, 354 N.E.2d 25); second, the recommendation was clearly the personal opinion of the attorney, and it is error to inject personal opinions into closing arguments (*Robinson v. Wieboldt Stores, Inc.* (1982), 104 Ill. App. 3d 1021, 433 N.E.2d 1005). Although objectionable, this testimony came in without objection. As such, any objections are waived for purposes of this appeal and cannot be grounds for reversal.

Affirmed in part; reversed in part and remanded.

TRAPP and MILLER, JJ., concur.