*In re* MARRIAGE OF CRAIG L. WRIGHT, Petitioner and Counterrespondent-Appellee and Cross-Appellant, and BRENDA L. WRIGHT, Respondent and Counterpetitioner-Appellant and Cross-Appellee.

Fifth District   No. 5—90—0332

Opinion filed April 24, 1991.

James F. Jarrett, of Schneiderjon, Weber & Jarrett, of Effingham, for appellant.

Larry L. LeFevre, of LeFevre, Zeman, Oldfield & Schwarm, of Vandalia, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Petitioner-counterrespondent, Craig L. Wright, and respondent-counterpetitioner, Brenda L. Wright, were married December 24, 1986. The only child of the marriage, Tommy, was born July 18, 1987. The couple separated on November 3, 1989, and on November 6, 1989, Mr. Wright filed a petition for dissolution of marriage in the Fayette County circuit court. Mrs. Wright filed her counterpetition on November 21, 1989, and a hearing was held on February 9, 1990.

The trial court's final judgment of dissolution of marriage was entered on May 16, 1990, and, among other things, provided that it would be in Tommy's best interest to place him in the permanent custody of Mr. Wright. The trial court did not order Mrs. Wright to pay child support.

On appeal Mrs. Wright contends only that the trial court's award of permanent custody to Mr. Wright was against the manifest weight of the evidence. Mr. Wright has filed a cross-appeal alleging that the trial court erred in failing to order Mrs. Wright to pay child support. For the reasons which follow, we affirm in part and reverse in part.

We note at the outset that a motion filed by Mr. Wright to strike Mrs. Wright's brief, or in the alternative, to strike portions of her brief, was taken with the case. Mr. Wright argues that Mrs. Wright's entire brief should be stricken because her statement of facts does not comply with Supreme Court Rule 341(e)(6) (134 Ill. 2d R. 341(e)(6)).

■ Mrs. Wright's statement of facts contains only the procedural history of the case. The testimony presented by the various witnesses is set out in the argument section of the brief. While this was clearly improper, we decline to strike Mrs. Wright's entire brief. However, we do strike the following portion of the brief located on page 11:

> "Yet, the trial court ignored the fact that just prior to its decision, the petitioner moved out of the marital residence. Where did the petitioner move to? It was not known for sure, but it was a good bet that he moved into his parents' home."

The basis of this argument is a letter filed April 26, 1990, by Mrs. Wright's counsel. In the letter, Mr. Wright's landlord states that Mr. Wright has moved out of the marital residence. This letter was not attached to a motion to reopen the proofs. Therefore, it is clearly not part of the record on appeal and any mention of it or its contents must be stricken from appellant's brief. *Sanni, Inc. v. Fiocchi* (1982), 111 Ill. App. 3d 234, 443 N.E.2d 1108.

■ We next address Mrs. Wright's contention that the trial court's award of permanent custody to Mr. Wright was against the

manifest weight of the evidence. One of the most difficult tasks of trial courts is determining which parent in a failed marriage will have custody of the children. (*In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 418 N.E.2d 947, 953.) "The primary consideration in determining custody is the best interest and welfare of the child" (*In re Marriage of Stuart* (1986), 141 Ill. App. 3d 314, 317-18, 490 N.E.2d 243, 246). The legislature has set forth some of the relevant factors to be considered by trial courts when determining the best interests of a child:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved;

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; and

(7) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child.

(c) The court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child. However, such presumption shall not be construed as a presumption that an order awarding joint custody is in the best interests of the child." Ill. Rev. Stat. 1989, ch. 40, par. 602.

There is a strong and compelling presumption that the trial court, the entity closest to the litigation and in the best position to observe the witnesses, has made the proper placement decision. (*In re Marriage of Pool* (1983), 118 Ill. App. 3d 1035, 1039, 455 N.E.2d 887, 890.) "The custodial decision rests on temperaments, personalities and capabilities" (*In re Marriage of Kennedy*, 94 Ill. App. 3d at 545, 418 N.E.2d at 953), and only where it is contrary to the manifest weight

of the evidence will it be reversed. *In re Marriage of Stuart*, 141 Ill. App. 3d 314, 490 N.E.2d 243.

■ On the facts before us we cannot say that the trial court's placement decision was against the manifest weight of the evidence. The parties were very bitter towards one another in this case. The separation came about when Mrs. Wright moved from the marital home on November 3, 1989, and took Tommy and most of the marital possessions with her. Both parties filed emergency orders of protection, and each party made allegations of child abuse against the other party. At the time of trial Mr. Wright had been employed at Sherwin-Williams as a warehouse technician for four years. He worked five days a week from 7 a.m. until 3 p.m. with occasional overtime. Mrs. Wright had worked at Fedder's USA for approximately one year. She worked five days a week from 4 p.m. until 12:30 a.m. In addition, Mrs. Wright was required to work overtime. For three months in the summer of 1989 she worked 10-hour days, 8 p.m. to 6:30 a.m.

Mr. Wright testified that he was better suited to care for Tommy. He testified that whenever he was not working he was with Tommy, that he always played with Tommy, did house chores with him, taught him how to walk and say his ABC's and weaned him from his bottle. He further testified that Mrs. Wright acted indifferently towards Tommy and was more interested in sleeping and doing her housework than in spending time with Tommy. He stated that Mrs. Wright's job prevented her from being with Tommy. He also testified that Mrs. Wright repeatedly used foul language in front of Tommy and spanked him excessively. He described an occasion when Mrs. Wright was driving the family automobile with himself and Tommy present. Mrs. Wright saw a woman with whom she was angry and swerved over the center line towards the woman. She then "flipped the woman off." Mr. Wright also described an incident where Mrs. Wright, after spanking Tommy, stated, "God that even hurt my hand." The other witnesses called by Mr. Wright testified that Mr. Wright would be the better custodian of Tommy.

Mrs. Wright testified that she and Tommy "get along really good and try to do things." She testified that Mr. Wright would pop wheelies on a three-wheeler with Tommy in his lap. She also stated that Mr. Wright taught Tommy how to start a car and would occasionally let Tommy sit on his lap and steer the car. Mrs. Wright also stated that Tommy was very rarely in his car seat when Mr. Wright took him places. She also testified that Mr. Wright used foul language in front of Tommy. She described an incident when Mr. Wright and Tommy were washing dishes. Tommy put some soap suds in his mouth, and

Mr. Wright called him a "dumb ass." She also stated that in October of 1989 Mr. Wright tickled Tommy's stomach to the point that Tommy vomited. She further testified that Mr. Wright drank excessively every Thursday, Friday, and Saturday nights. However, Mrs. Wright also stated that Mr. Wright and Tommy got along well together.

Other witnesses called by Mrs. Wright testified that on occasion Mr. Wright ignored Tommy. They also testified that Tommy would attempt to spit on his mother and hit her and was generally hard to control when he returned from visitations with Mr. Wright. Mrs. Wright testified that Tommy was told by Mr. Wright to do those things. Mr. Wright denied that allegation and argued that Tommy's behavior is a sign of his unhappiness when he is with his mother.

While we have set forth only a brief summary of the evidence presented at trial, we feel that it is representative of the record as a whole. A careful review of the record reveals that this was a close case. A similar situation was presented in *In re Marriage of Pool* (1983), 118 Ill. App. 3d 1035, 455 N.E.2d 887:

> "The lower court's decision was based on the evidence which was close but nonetheless clearly favored neither party. As such, the decision to place the children with the father should be upheld as not against the manifest weight of the evidence." (*In re Marriage of Pool*, 118 Ill. App. 3d at 1039, 455 N.E.2d at 890-91.)

As in *Pool*, the evidence before the trial court did not clearly favor either party. Therefore, we cannot say that the trial court's decision to place permanent custody of Tommy in Mr. Wright was against the manifest weight of the evidence.

We now address Mr. Wright's cross-appeal. He contends that the trial court erred in failing to set forth in its order the reasons for deviating from the child support guidelines. While not raised by Mrs. Wright, we feel that the issue of waiver must be addressed before we reach the merits of Mr. Wright's cross-appeal.

■ Our research has disclosed the case of *In re Marriage of Harper* (1989), 191 Ill. App. 3d 245, 547 N.E.2d 574. In *Harper*, the trial court deviated from the child support guidelines, and it failed to set forth in its order the reasons for the deviation. The appellant alleged that this was error, and the court held that the appellant had waived the issue on appeal:

> "Rule 366(b)(3)(ii) eliminates the requirement for a post-trial motion in nonjury civil cases, but does not eliminate the requirement for a timely objection to an alleged procedural error, especially where, as here, that error could have been easily cor-

rected by the trial court." *In re Marriage of Harper*, 191 Ill. App. 3d at 247, 547 N.E.2d at 575.

We agree with the majority in *Harper* that the preferable practice would be to raise possible errors for the trial court's consideration. This procedure is both courteous and, hopefully, judicially efficient, since the trial court could easily make the necessary findings if their absence were promptly brought to its attention. We cannot agree, however, with the *Harper* majority's conclusion that the failure to request the findings at the trial level precludes raising the issue on appeal. We agree instead with Justice Green's analysis in his dissenting opinion. *In re Marriage of Harper* (1989), 191 Ill. App. 3d 245, 248-49, 547 N.E.2d 574, 576-77 (Green, J., dissenting).

Rule 366(b)(3)(ii) provides as follows:

"(3) *Scope and Procedure on Review in Nonjury Cases.* In nonjury cases the following rules govern:

\* \* \*

(ii) *Post-trial Motions.* Neither the filing of nor the failure to file a post-trial motion limits the scope of review." (134 Ill. 2d R. 366(b)(3)(ii).)

As Justice Green points out, Rule 366(b)(3)(ii) clearly enables a party to raise certain issues for the first time on appeal. We are of the opinion that the *Harper* majority incorrectly read into Rule 366(b)(3)(ii) a distinction between procedural and substantive issues. Therefore, we hold that Mr. Wright has not waived the child support issue before us, and we turn to the merits of the issue.

■ Subsection (a) of section 505 provides in pertinent part:

"(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. \* \* \*

\* \* \*

*If the court orders a lower award,* based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, *it shall make express findings as to its reason for doing so.* The guidelines may be exceeded by the court without express findings, or by agreement of the parties." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).)

The language of the statute clearly indicates that the trial court must make express findings when it orders an award lower than the one set forth in the guidelines. The cases interpreting section 505 also indicate that the trial court must make express findings when ordering an award lower than the award set forth in the guidelines. See *People ex rel. Browning v. Melton* (1989), 180 Ill. App. 3d 519, 536 N.E.2d

133; *In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 545 N.E.2d 459.

It is clear, therefore, that the trial court erred in failing to set forth in its order the reasons for deviating from the child support guidelines. We, therefore, reverse and remand the child support portion of the trial court's order to enable the trial court to set forth its reasons for deviating from the guidelines.

Affirmed in part; reversed in part and remanded.

GOLDENHERSH and HOWERTON, JJ., concur.