2026 IL App (1st) 242168-U

SECOND DIVISION
April 14, 2026

Nos. 1-24-2168, 1-24-2526 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF HEATHER M. OPAS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 2021 D 000685 |
| WESTON F. OPAS, | ) ) ) | Honorable Geri Pinzur Rosenberg, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court did not err in holding respondent in contempt for failing to pay child support and other amounts as ordered by the court. Appellant failed to include a report of proceedings or acceptable substitute to support his claims of error regarding the modification of parenting time and the allocation of decision making. Affirmed.

¶ 2    Petitioner Heather M. Opas filed a petition for the dissolution of her marriage with respondent Weston F. Opas, which the trial court granted. Heather subsequently filed a motion to modify parenting time and the allocation of decision making with respect to the parties' child. The court granted this motion and also ordered the appointment of a guardian *ad litem* (GAL) to represent the parties' child. Heather later filed a petition for rule to show cause seeking an indirect

civil contempt of court finding against Weston for Weston's alleged failure to pay his share of the child support and other allocated expenses. Following a hearing, the court granted Heather's petition, found Weston in indirect civil contempt of court, and ordered him committed to jail until he purged his contempt by paying the previously ordered amounts. Weston now appeals from the trial court's orders granting Heather's motion to modify parenting time and finding him in indirect civil contempt of court. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                     BACKGROUND

¶ 4     Heather and Weston were married in December 2011. On January 26, 2021, Heather filed her petition for dissolution of marriage pursuant to the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/101 *et seq.* (West 2020)). Heather stated in her petition that the parties had one child, P.O., who was born in August 2015. On October 21, 2021, the trial court entered a judgment dissolving the parties' marriage, which incorporated (1) a marital settlement agreement (MSA), concerning, *inter alia*, questions of child support and their child's expenses and (2) a "Parental Allocation Judgment" (dated July 30, 2021) (Allocation Judgment), concerning the care and decision-making responsibility for their child.

¶ 5     The MSA provided in relevant part that child support was "set at $0" based upon Heather's gross yearly income of $34,000 and Weston's imputed gross yearly income of $19,000. The parties waived any claim of maintenance from the other and further agreed to each be responsible for 50% of their child's medical expenses, childcare expenses, and school expenses (including extracurricular expenses). Heather and Weston also agreed to equally divide the aggregate value of their bank, retirement, and investment accounts. Notably, however, the parties agreed that Weston's beneficial interest in a nonmarital trust would be allocated to him "as his sole and separate property, free and clear of any interest" on Heather's part.

¶ 6     The Allocation Judgment provided in part that each party agreed that the other "is a fit parent and proper person to care for the minor child." Heather and Weston agreed to share parenting rights and responsibilities. The order stated that their child would attend school in the district where Weston resides and that Weston would also have the designation of "custodian" of the parties' child but "only for purposes of all State and Federal statutes" requiring that designation. The parties further agreed that Weston would schedule routine healthcare appointments for the child and maintain possession of the child's passport (but would not withhold the passport from Heather). Finally, with respect to parenting time, the parties agreed that, on a varying two-week schedule, Weston would have approximately 60% of total parenting time and Heather would have 40%.

¶ 7     On December 21, 2023, Heather filed a two-count motion to modify (1) parenting time and the allocation of decision making (count I) and (2) child support (count II). Regarding count I, Heather sought an immediate modification to parenting time and decision making and asked for sole decision-making authority for the parties' child and restriction on Weston's parenting time. Heather explained that, since the entry of the Allocation Judgment, Weston had been arrested and charged with multiple criminal offenses involving alleged sexual misconduct with minors, including the following: indecent solicitation/aggravated criminal sexual abuse, solicitation to meet a child, grooming, traveling to meet a minor, three counts of unlawful possession of a weapon by a felon, unlawful possession of a rifle, failure to report as a sex offender, and two counts of being a child sex offender while present within a school zone. Heather's motion further stated that Weston was being held in the Cook County jail without bond while these criminal charges are pending. Heather additionally pointed out that the pending charges against Weston, a convicted sex offender, concern "sex crimes against minor girls not much older than his own daughter," which Heather argued constituted a serious endangerment to their child. Heather also stated that, since Weston is "in jail with no bond," the child's needs require Heather to be the full-time parent.

3

Finally, due to the serious nature of the charges, Heather asked for "sole decision[]making for the minor child's education, healthcare, religion, and extracurricular activities."

¶ 8      With respect to count II, Heather stated that Weston's arrest and imprisonment constituted "a substantial change in circumstances," warranting a modification of child support from the previously agreed amount of zero to an amount determined pursuant to statute.  Heather explained that she is currently the full-time parent due to Weston's criminal charges and imprisonment, whereas previously Weston had substantial parenting time.  Heather added that Weston is still able to contribute child support despite his incarceration because he is the sole beneficiary of a trust fund that was awarded to him in the divorce.  Heather further asked that the court order Weston pay "through *** any source of income, including income available to him from his trust, into a 503(g) trust account" for their child's benefit.  Heather noted that, because of the publicity surrounding Weston's criminal charges and the nature of the alleged offenses, their minor child will need therapy and other services that Heather cannot afford without Weston's contribution.

¶ 9      On January 16, 2024, the trial court entered a written order concerning count I of Heather's motion (modify parenting time and decision-making authority).  The order initially recited that Heather's counsel was present and that Weston appeared *pro se* via Zoom.  The order then stated that, upon review, the court considered the matter to be "an emergency which presents a potential danger to the minor child," and therefore it was entering an interim order on a temporary basis. The court suspended Weston's parenting time until further order of court and granted Heather sole parenting time and decision-making responsibilities while Weston is incarcerated.  The court granted Weston 28 days to hire counsel and respond to Heather's motion.  Finally, the court appointed a GAL, with the retainer to be divided equally among Heather and Weston.

¶ 10     On June 17, 2024, the trial court entered an amended order following a hearing (on June 12, 2024) concerning the status of Heather's December 2023 motion to modify.  The order noted that

4

the court had "reviewed the exhibits of the Petitioner and heard argument from both Counsels" and was "fully advised in the premises."

¶ 11    The court found that Weston failed to comply with prior orders by not (1) paying GAL fees, (2) providing a financial affidavit, and (3) responding to the proposed allocation judgment. The court also found that Heather was exercising all parenting time and bearing all of their child's expenses. The court further determined that Weston has the ability, but not the willingness, to pay child support via a trust fund of which he is "the sole beneficiary." The court expressed its "grave concerns" that, absent court intervention, Weston's trust fund will be depleted, leaving no funds for the minor child. The court thus concluded that "there has been a substantial change in circumstances warranting a modification" of the prior judgment.

¶ 12    Imputing income to Weston at the minimum wage, the court calculated his statutory child support obligation as $451.37 per month and an additional $101.27 per month for his share of the child's health insurance. The court also ordered Weston to pay $3,315.84 in retroactive support and insurance contributions. The prior order requiring the parties to equally share the child's medical, educational, and extracurricular expenses remained in effect, and Heather was awarded the tax dependency exemption. The court ordered the creation of a trust pursuant to section 503(g) of the IMDMA (750 ILCS 5/503(g) (West 2022)). The trust would be funded with $81,519.34 from Weston's trust assets, which would comprise Weston's future child support, health insurance contributions, a portion of the child's expenses, and GAL fees. Weston "and/or his agent(s)" were directed to "immediately cooperate with executing all documentation necessary" to form and fund the trust prior to the next court date of August 5, 2024, at which time the court would hold a hearing on count I of Heather's December 2023 motion.

¶ 13    On August 5, 2024, the trial court held a hearing on Heather's Motion to Modify Parenting Time and the Allocation of Decision Making that she had filed in December 2023. The record on

appeal, however, does not contain a transcript (or acceptable substitute) of this hearing. On September 25, 2024, the trial court issued an eight-page written order memorializing its findings from the hearing. The court noted that Heather appeared with counsel, Weston appeared through counsel, and GAL participated remotely. Weston was not personally present and remained incarcerated in the Cook County jail pending trial in case Nos. 23-CR-1107901 and 23-CR-1240301. The court further stated that it was fully advised in the premises.

¶ 14    The parties stipulated that Weston has been incarcerated since October 18, 2023, and that he had been charged with the following criminal offenses: (1) Indecent solicitation/aggravated criminal sexual abuse, (2) Solicitation to meet a child, (3) Grooming, (4) Traveling to meet a minor, (5) Unlawful possession of a weapon by a felon (three counts), (6) Unlawful possession of a rifle, and (7) Presence within school zone by a child sex offender (two counts). The court admitted the parties' Allocation Judgment and Heather's motion to modify into evidence, denied admission of certain custody records, and took judicial notice of an order entered on May 15, 2024, relating to Weston's related criminal case.[1]

¶ 15    At the hearing, Heather testified that the parties divorced in October 2021 and share one minor child, P.O., born during the marriage. Under the original Allocation Judgment, Weston had been designated the custodial/residential parent and the parties shared equal parenting time. Heather stated that Weston failed to timely register the child for school, wanting to homeschool her instead, and their child had 14 tardies and 14 absences in both 2021 and 2022. Heather added that Weston also failed to timely make the child's dental, therapy, and medical appointments,

---

[1] This order granted the State's petition for pretrial detention. This court may take judicial notice of the public documents that are included in the records of other courts. See *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7; *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 20 n.4; Ill. R. Evid. 201 (eff. Jan. 1, 2011); R. 803(8) (eff. Jan. 25, 2023).

resulting in the child experiencing "stool accidents" while in Weston's care, but that these accidents significantly decreased after residing with Heather. Heather further acknowledged that Weston had a 2004 conviction for child pornography and planned to have a female minor move into his residence where he resided with the parties' minor child.

¶ 16    The GAL also testified regarding her investigation and the child's circumstances following Weston's incarceration. The GAL noted that the child successfully transitioned to residing full-time with Heather and that Heather had taken steps to support the child's transition, including enrolling the child in therapy and school-based support services. According to the GAL, Weston acknowledged his 2004 child pornography conviction and informed the GAL that a female minor—whom Weston had referred to as his "girlfriend" and whom he intended to become the child's "step[]mother"—had resided in his household and interacted with the child. The GAL expressed her concerns regarding Weston's plan to homeschool the parties' child because it appeared that Weston wanted the child "all to himself." Accordingly, the GAL recommended that the court both grant Heather sole decision-making authority and also designate Heather as the custodial/residential parent for school purposes. The GAL further observed that Weston's incarceration prevented him from exercising in-person parenting time.

¶ 17    In setting forth its judgment, the trial court stated that it had heard "credible testimony" from Heather and the GAL, and it also considered the relevant statutory factors under the IMDMA as well as "extensive evidence." The court then found that, based upon a preponderance of the evidence, Weston posed a "serious endangerment to the minor child and engaged in conduct that seriously endangered the child's mental, moral, or physical health." Accordingly, there was a substantial change in circumstances warranting modification of the Allocation Judgment.

¶ 18    The court then granted Heather's motion to modify the Allocation Judgment. The court awarded Heather sole decision-making authority and designated her as the child's

7

custodial/residential parent, barring Weston from accessing the child's school, medical, or other records. Weston's parenting time was suspended during the pendency of his criminal proceedings and any resulting incarceration or supervision, with any future parenting time subject to court review and supervision upon proper petition. The court further barred Weston from communicating with Heather or the minor child during his incarceration, granted Heather exclusive authority over the child's travel, and discharged the GAL.

¶ 19    On September 10, 2024, Heather filed a petition for a rule to show cause and for contribution to attorney fees against Weston. The petition recited the prior court orders for Weston to (1) pay 50% of the GAL's retainer following the GAL's reappointment, (2) pay $3,315.84 in retroactive child support, and (3) fund a trust for the minor child pursuant to section 503(g) of the IMDMA in the amount of $81,519.34. The petition alleged that Weston failed to comply with those orders, including failing to pay child support and GAL fees. Heather further claimed that she had paid part of the GAL fees, around $14,500 in attorney fees, and $800 to establish the section 503(g) trust, whereas Weston paid none of the required expenses despite being the beneficiary of a family trust through which he has access to funds. Heather asked the court to issue a rule to show cause and hold Weston in indirect civil contempt for willful violation of the January 16, June 17, and August 5, 2024 orders.[2]

¶ 20    On October 11, 2024, the parties appeared before the trial court for a hearing, *inter alia*, on Heather's petition for rule to show cause. A substantial portion of the proceeding concerned procedural deficiencies in Weston's filings. Counsel for Weston attempted to present a motion seeking leave to file a late response to the petition for rule to show cause. The court found that Weston's prior attempts to notice motions for hearing were improper because no hearing date had

---

[2]    Heather also sought an award of attorney fees and costs incurred in preparing and litigating the petition, which is not before this court.

been obtained through the clerk's office. The court found no properly noticed motion for presentation on October 11, 2024. Nonetheless, Heather's counsel agreed to waive notice to expedite the proceedings. The court, however, declined to proceed with the evidentiary hearing on the petition for rule to show cause and related fee requests due to incomplete documentation, namely, the absence of detailed billing records. Accordingly, the court (1) granted Weston leave to file his response to the petition for rule to show cause *instanter*; (2) ordered all outstanding materials, including billing records, be exchanged and submitted in advance; (3) established a briefing schedule for responses to a GAL fee petition; and (4) continued the matter for a full evidentiary hearing to November 18, 2024.

¶ 21 On the same date (October 11, 2024), Weston filed his response to Heather's petition for a rule to show cause *instanter*. Weston essentially argued that he was indigent and had no control over the family trust of which he is a beneficiary. Weston thus concluded that Heather's petition should be denied because his failure to comply with the court orders was not willful.

¶ 22 On November 18, 2024, the trial court began a hearing concerning various matters, including a petition for approval and allocation of fees (filed by the GAL) and Heather's petition for rule to show cause and request for attorney-fee contribution. The court first addressed a technical audio issue involving Weston's counsel and confirmed the presence and certification of the court reporter that counsel for Weston had hired. The court then turned to the GAL's petition for fees that was filed on October 8, 2024. The GAL stated that the fee balance was $6,323.75 as of the date of the hearing, Heather had made partial payments, but Weston had made none. The GAL requested that Heather advance the outstanding fees while Heather pursued enforcement of existing court orders against Weston. After hearing argument, the court found that the GAL's fees were fair and reasonable, but it denied the request that Heather advance the outstanding balance, ordering that the current "50/50" allocation be maintained.

¶ 23    The court then turned to Heather's petition for rule to show cause.  Initially, the court granted Heather's request to take judicial notice of prior orders (1) reappointing the GAL; (2) directing Weston to fund a section 503(g) trust and pay retroactive child support and other related expenses totaling $81,519.34; and (3) finding Weston failed to comply with those orders.

¶ 24    Heather then testified regarding Weston's trust accounts, her attorney billing records, and her financial circumstances.  Heather presented an account statement for the "Ruben L. Gregor [*sic*] Revocable Trust FBO Weston F. Opas DTD 11/24/92."  Heather further identified various check images on the statement revealing a series of checks written to Weston for amounts ranging from approximately $337 to $12,813.  She additionally presented evidence showing she had incurred around $16,000 in attorney fees and additional expenses related to GAL fees and the creation of the child's trust.  Finally, Heather testified that her expenses exceed her $45,000 annual income.  Following Heather's testimony, the court continued the matter to November 21, 2024.

¶ 25    On November 21, 2024, the hearing on Heather's petition for a rule to show cause continued.  Counsel for Heather then called Weston to testify.  Weston admitted that he is a beneficiary of the "Rubin [*sic*] L. Breger Trust," the trustee of which is a relative.  When requesting funds from the trust, Weston said that he does not communicate directly with the trustee and instead communicates his requests through his mother.  Weston testified that requests for funds are not always approved, but he had no documentation showing any denied requests.  He conceded that approximately $12,000 had been paid to his attorney, but he was unsure how those payments were allocated between the instant domestic relations matter and his criminal matter.  Weston further admitted that he has a bank account, but he stated that he cannot access it because Heather has his wallet.  He also acknowledged that his mother sometimes advances funds for his expenses (such as the jail commissary), which may subsequently be reimbursed from the trust.

¶ 26    On cross-examination, Weston reiterated that he communicates with the trustee only through his mother and that certain requests, including requests relating to child support, had been denied.  Although he received no trust documentation while incarcerated, he had previously kept trust-related documents at his residence.  Weston further testified that he had attempted to inform the court of his inability to pay by filing petitions to proceed *in forma pauperis* and other motions seeking participation in the proceedings while incarcerated.   He stated that, prior to his incarceration, he worked as a drone pilot earning approximately $8,000 to $12,000 annually.

¶ 27    At the conclusion of the presentation of evidence, the trial court found that Heather had established a *prima facie* basis for the issuance of a rule to show cause.  The court therefore issued the rule and shifted the burden to Weston.  Weston, however, elected to rely upon his cross-examination testimony as his case-in-chief, and no additional evidence was presented.

¶ 28    Following the arguments of the parties, the trial court found Weston's actions "willful and contemptuous."  The court found Weston's testimony not credible, specifically, that he (1) does not have the ability to pay and (2) lacks access to his bank accounts because Heather has his wallet.  The court also found that there is a trust for Weston's benefit and that the trustee is Weston's relative.  The court recounted testimony from Weston that around $12,000 was paid to his attorney and other evidence that there were checks for "significant amounts of money" paid by the trustee for Weston's benefit.  Finally, the Court found it "concerning" that, although "there are funds coming out for the benefit of Weston in terms of having private [c]ounsel represent him in the criminal matter and domestic relations matter and access to supplies while he is *** awaiting trial in the criminal matter[,] *** no funds are being paid to the minor child for child support."

¶ 29    The court reiterated its finding that Weston was in contempt, his actions were "willful and contemptuous," and he has "the ability to pay."  The court set a "cash bond" of $81,519.34 for Weston to purge the contempt and continued the matter for 30 days for status.  The court then

entered a written order of adjudication of indirect civil contempt and/or order of commitment against Weston. The court stated that Weston was in indirect civil contempt of court for failure to comply with the court's prior orders entered on January 16, June 17, and August 5, 2024, directing him to pay 50% of the GAL's fees, $81,519.34 to the 503(g) trust, and $3,315.84 to Heather for "retroactive child support and contribution to health insurance." The court's order stated that Weston would be committed to the Cook County jail until he purges his contempt by paying $81,519.34 to the 503(g) trust. Finally, the order set a status hearing for December 18, 2024.

¶ 30    On October 25, 2024, Weston filed a notice of appeal from the trial court's order dated September 25, 2024, which Weston described as an appeal from an "[a]llocation [o]rder denying father any visitation, contact or input." This appeal was given appellate number 1-24-2168. On December 18, 2024, Weston filed a second notice of appeal from the court's order dated November 21, 2024, and described this as an appeal from the rule to show cause, the order of adjudication of indirect civil contempt, and "violations of due process." This appeal was given appellate number 1-24-2526. On March 10, 2025, this court granted Weston's motion to consolidate the appeals.

¶ 31    This appeal follows.

¶ 32                                ANALYSIS

¶ 33    Heather has not filed an appearance in this court, nor has she filed a brief. Consequently, we consider this case on the record and Weston's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing courts may address the merits of a case on one party's brief only "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief").

¶ 34    We next discuss the state of the record on appeal. There is no transcript (or acceptable substitute) for the hearing on August 5, 2024. The order (dated September 25, 2024) that resulted from that hearing is the only one that Weston listed in his notice of appeal in appeal number

1-24-2168. Illinois Supreme Court Rules 321 and 324 require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. See Ill. S. Ct. Rs. 321 (eff. Oct. 1, 2021) and 324 (eff. July 1, 2017). If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Rule 323. See Ill. S. Ct. R. 323 (eff. July 1, 2017).

¶ 35 Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. The burden of providing a sufficient record on appeal rests with the appellant (here, Weston). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we presume the trial court acted in conformity with the law and with a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. Any doubts arising from an incomplete record are resolved against the appellant. *Id.* This is particularly true "when the judgment order states that the court is fully advised in the premises." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988).

¶ 36 Weston's brief is also deficient. Weston has failed to provide this court with the relevant standard of review for the issues he raises, in violation of Rule 341(h)(3) (Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020)). Additionally, although it is listed immediately after the "points and authorities" section of his brief, there is no appendix to Weston's appellant's brief, as required by Rules 341(h)(9) and 342 (Ill. S. Ct. Rs. 341(h)(9) (eff. Oct. 1, 2020) and 342 (eff. Oct. 1, 2019)). This court is empowered to strike a brief and dismiss an appeal when an appellant's brief repeatedly violates Rule 341. *Trapp v. City of Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 14 (quoting *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005)). Striking a brief or dismissing an appeal, however, is a particularly harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). We note that counsel for Weston has made some effort to comply with

the rules of our supreme court, and we can discern the issues presented. Accordingly, and with the limitations noted above in mind, we elect to consider the merits of this appeal.

¶ 37     In this case, the September 2024 order that Weston challenges in appeal number 1-24-2168 indicated that the court was "fully advised in the premises" and that it had heard "credible testimony" from both Heather and the GAL as well as additional "extensive evidence." This credible testimony and extensive evidence were presented at a hearing on August 5, 2024. As noted above, however, Weston has provided neither a transcript nor acceptable substitute for this hearing. Since Weston has failed to provide this court with a sufficient record on appeal, we must presume the court acted in conformity with the law and with a sufficient factual basis for its findings and resolve any doubts arising from this incomplete record against the appellant (*i.e.*, Weston). See *Foutch*, 99 Ill. 2d at 392; see also, *e.g.*, *In re Marriage of Grauer*, 153 Ill. App. 3d 125, 130 (1987) ("This court cannot and will not decide in favor of Respondent[-Appellant] on the alleged abuse of discretion in the absence of his showing in the record facts that would support such a conclusion."). We must therefore reject his claim of error in appeal number 1-24-2168.

¶ 38     We now turn to appeal number 1-24-2526. Although it is not entirely clear, Weston apparently challenges the trial court's finding that his testimony of having no control over his family trust (and thus no ability to compel a trust payment to satisfy his child support obligations) was not credible. Weston thus argues that his "lack of legal authority and therefore ability absolves him of any claims" that he willfully disobeyed the court's orders.

¶ 39     Generally, a party commits indirect civil contempt when he violates a trial court order through conduct outside the court's presence. *In re Marriage of Knoll and Coyne*, 2016 IL App (1st) 152494, ¶ 50. The burden initially falls on the petitioner to show by a preponderance of the evidence that the alleged contemnor has violated the court order. *Id.* If so established, the burden then shifts to the contemnor to show that the violation was not willful. *Id.* Nonetheless, a finding

of "willful disobedience of a court order" is necessary to a finding of indirect civil contempt. (Internal quotation marks removed.) *Id.*

¶ 40    Whether a party is guilty of contempt is a question of fact for the trial court. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984). The *Logston* court further held that a reviewing court will not disturb the trial court's finding "unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *Id.* at 287. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Under this highly deferential standard of review, we will not retry the case (*In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004)), and in cases where the evidence clearly favors neither party, we are compelled to affirm the trial court because the opposite conclusion is not *clearly* evident (*In re Marriage of Pool*, 118 Ill. App. 3d 1035, 1039 (1983)). The abuse of discretion standard of review is "the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *Doe v. J.P.J.*, 2024 IL App (1st) 240157, ¶ 27 (citing *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Maniscalco v. Porte Brown, LLC*, 2018 IL App (1st) 180716, ¶ 29).

¶ 41    In this case, Weston presents no basis for us to disturb the trial court's finding. At the outset, Weston asserts that Heather "failed to prove that he had notice of the order [*sic*]." The record, however, belies his claim. The order finding Weston in indirect civil contempt of court stated that Weston failed to comply with the orders issued on the following dates: January 16, 2024, June 17, 2024, and August 5, 2024. On each of those dates, Weston was either present *pro se* via Zoom or represented by counsel. Weston thus had notice of the relevant orders.

¶ 42 The evidence at the hearing indicated that, based upon an account statement for Weston's family trust, he had received multiple checks for amounts ranging as high as nearly $13,000. Furthermore, the trustee is a family member, and Weston communicates requests for disbursements from the trust through his mother, who then passes the request along to their family member trustee. Weston claimed his requests are not always approved, but there was no documentation presented to substantiate his claim. Weston's attorney had been paid about $12,000, which may have also included a privately retained court reporter, and he further receives funds from his mother for the jail commissary. Weston further confirmed that he has a bank account but claimed he cannot access it because Heather allegedly has his wallet. These facts were sufficient to establish that Weston's failure to pay his share of child support—which was calculated by imputing a mere minimum wage—as well as his share of the GAL's fees and other allocated expenses was willful and contumacious. Weston elected not to present any evidence in his case-in-chief when the court determined that Heather had established her *prima facie* case. We further note that the court's factual findings are entitled to great deference under our standard of review. See *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 84 (2006). Additionally, this court may not overturn the trial court's judgment simply because we might disagree with the judgment or might have come to a different conclusion if we were the trier of fact. See *Marriage of Knoll and Coyne*, 2016 IL App (1st) 152494, ¶ 50; see also *Marriage of Pool*, 118 Ill. App. 3d at 1039 (reviewing court compelled to affirm where the evidence clearly favors neither party because the opposite conclusion is not *clearly* evident). Accordingly, the trial court did not err in finding Weston in contempt, and his final claim of error is therefore without merit.

¶ 43 CONCLUSION

¶ 44 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 45 Affirmed.