*In re* MARRIAGE OF CHARLES DAVID QUINDRY, Petitioner and Counterrespondent, and RUTH ANN QUINDRY (LaBUWI), Respondent and Counterpetitioner.

Fifth District   No. 5—90—0798

Opinion filed January 29, 1992.

Mark D. Prince, of R. Courtney Hughes & Associates, of Carbondale, for appellant.

Curtis G. Quindry, of Newton, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Mother, Ruth Ann Quindry (LaBuwi), appeals from the judgment of the circuit court of Franklin County awarding custody of the parties' minor child to father, Charles David Quindry. We affirm.

Mother and father were married in Illinois in 1986. The parties' only child, Elizabeth Ashley Quindry (Ashley), was born in September of 1986. In January of 1989, the parties separated while they were living in Arizona, and mother returned to Illinois with Ashley. By agreement, an order of temporary custody awarding custody to mother was entered in September of 1989. Father subsequently returned to the area and sought custody of Ashley. Both parties have remarried and are employed full time. After three days of testimony, the trial court awarded permanent custody to father subject to liberal visitation to mother. The court found both parties to be reasonably fit to have custody but concluded Ashley's best interests would be better served by father. Mother argues on appeal the trial court's award of custody to father is an abuse of discretion and against the manifest weight of the evidence. She also contends the trial court was prevented from considering fully the best interests of Ashley when certain evidence was not presented to the court on the advice of counsel.

■ The primary consideration in determining any custody dispute is the best interest and welfare of the child. (See, *e.g., In re Custody of Piccirilli* (1980), 88 Ill. App. 3d 621, 625, 410 N.E.2d 1086, 1090.) The trial court, having had a superior opportunity to observe the witnesses, evaluate the evidence and consider the needs of the child, is in a better position than we are, sitting as a reviewing court, to determine just what that best interest is. (See, *e.g., In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 625, 402 N.E.2d 831, 836, *aff'd in part, vacated in part* (1981), 87 Ill. 2d 174, 429 N.E.2d 465.) As a result, we will not overturn a determination of custody unless the trial court's decision is contrary to the manifest weight of the evidence or exhibits a clear abuse of discretion. (See, *e.g., In re Marriage of Pool* (1983), 118 Ill. App. 3d 1035, 1039, 455 N.E.2d 887, 890; *Piccirilli*, 88 Ill. App. 3d at 626, 410 N.E.2d at 1090.) Neither is evident here. On the contrary, the record before us fully supports the award of custody of Ashley to father.

■ In its order, the trial court stated Ashley's best interests would be better served by father because he has been more resourceful than mother in providing valuable experiences for Ashley and in making use of the day for her educational development. It is true mother is not an unfit parent. It is also true father originally agreed to the vesting of temporary custody of Ashley in mother. At the time

of the parties' separation, however, father was still living in Arizona and working fairly long hours. Mother, on the other hand, returned to Illinois to live with her parents, who could and did assist with the raising of Ashley. Even though mother had primary custody of Ashley during this period, she was not and has not been Ashley's primary caretaker. Ashley spent the majority of her time, including three nights a week, with her grandparents in addition to every other weekend with father. Even when mother and father were together in Arizona, mother still did not take on the role of primary caretaker. Father and a downstairs neighbor in the apartment complex in which the parties lived took care of most of Ashley's needs along with maintenance of the household. Admittedly, father now lives in a large metropolitan area where he can and does take Ashley to museums and cultural events. But, he has also spent much time with Ashley reading children's books and watching children's movies and the like. Mother, on the other hand, takes Ashley to events which mother wishes to attend whether or not such events may be in Ashley's best interests. Contrary to mother's assertion, she is not being penalized for living in a small town. The way mother chooses to spend her free time with Ashley, however, is a proper factor to be considered in weighing Ashley's best interests.

Mother finds fault with the trial court's conclusion she departed covertly with Ashley from the marital home in Arizona without telling father where his daughter could be reached. This conclusion, however, is supported by the record. The uncontroverted testimony of the downstairs neighbor was that mother intended to leave Arizona without telling her husband. The neighbor further testified she helped hide mother's suitcases and drove mother and Ashley to the airport after father left for work. Even though mother returned home to her parents, father was not notified of Ashley's whereabouts. Mother also failed to inform father of her new address and phone number when she and Ashley moved out of her parents' house. Such actions reflect negatively upon mother's willingness to facilitate and encourage a close and continuing relationship between father and Ashley and necessarily must be factored into the custody resolution.

■ Mother next takes issue with the trial court's drawing adverse inferences from her failure to call her new husband as a witness on her behalf. Mother asserts on appeal his testimony would have been merely cumulative with the testimony of other witnesses, and as such, relying on *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 493, 342 N.E.2d 144, 150, any unfavorable inference presumption should not apply. We agree mother's new husband could not testify to the

long-term relationship between mother and Ashley, but his testimony would not have been merely cumulative. No one else but he could testify as to his willingness and ability to care for and provide a home for Ashley. Clearly, mother's new husband plays an important part in Ashley's life. While others testified they got along well, the trial court should have been given the opportunity to evaluate mother's new husband on its own. We therefore find no error in the trial court drawing any adverse inferences from mother's failure to call her new husband to appear on her behalf.

■ Mother's final contention on appeal pertains to her failure upon the advice of counsel to present evidence to the trial court of father's alleged past physical abuse of Ashley on six occasions in Arizona. Such abuse, according to mother's affidavit filed in support of her petition for rehearing, consisted of throwing Ashley against the couch or bed. We initially note that generally evidence not presented at trial cannot be raised on appeal and that parties should not be allowed to benefit on review from their failure to introduce evidence at trial. (See *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 52-54, 448 N.E.2d 545, 549-50.) While mother's allegations are sufficiently serious to perhaps overcome such rules, any suggestion of physical abuse by father was contradicted at trial. The downstairs neighbor who regularly baby-sat Ashley never saw any signs of physical abuse on Ashley nor observed any occasion where father ever struck Ashley. She further testified she did not hear any type of abuse through the "paper thin" walls. We agree with father that it is preposterous to believe an experienced attorney would intentionally fail to present such potentially damaging evidence if the same were in fact true. We too believe all pertinent evidence relating to Ashley's best interest was presented at trial and heard by the court. We therefore find the trial court properly awarded custody to father.

For the aforementioned reasons, we affirm the judgment of the circuit court of Franklin County.

Affirmed.

HARRISON and HOWERTON, JJ., concur.