*In re* MARRIAGE OF LISA KARONIS, Petitioner-Appellee, and JAMES P. KARONIS, Respondent-Appellant.

Second District   No. 3—97—0226

Opinion filed April 23, 1998.

Richard L. Lucas and Frank J. Wesolowski, both of Richard L. Lucas & Associates, Ltd., of Addison, for appellant.

Neal W. Cerne, of Cerne & Boros, P.C., of Wheaton, for appellee.

Linda D. Bishop, of Oak Brook, guardian *ad litem*.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, James P. Karonis, appeals the order of the circuit court of Du Page County granting the dissolution of marriage to petitioner, Lisa Karonis. Respondent contends that the trial court erred in (1) awarding custody of their minor children to petitioner; (2) allowing the guardians *ad litem* to hear illegally taped recordings of telephone conversations between respondent and the children; and (3) assessing the amount of child support. We affirm.

Respondent and petitioner were married on March 13, 1983. The parties have three children, C., born October 31, 1985; S., born April 2, 1990; and M., born March 28, 1992. Petitioner filed for dissolution of marriage on July 27, 1995. The trial court granted the dissolution on December 2, 1996, awarding permanent custody to petitioner subject to liberal visitation with respondent and setting child support payments of $800 per month. Respondent timely appeals.

Respondent first argues that the trial court's award of sole custody to petitioner was against the manifest weight of the evidence. Respondent contends that the children have consistently maintained that they would prefer to reside with him. Respondent also asserts that the evidence clearly shows that he is a better parent than petitioner.

■ The primary consideration in determining any custody dispute is the best interest and welfare of the children. 750 ILCS 5/602 (West 1996); *In re Marriage of Quindry*, 223 Ill. App. 3d 735, 737 (1992). Having had a superior opportunity to observe the witnesses, evaluate the evidence, and consider the needs of the children, the trial court is in a better position than the reviewing court to determine the children's best interest. *In re Marriage of Quindry*, 223 Ill. App. 3d at 737. A determination of custody will not be overturned unless the trial court's decision is contrary to the manifest weight of the evidence. *In re Marriage of Petraitis*, 263 Ill. App. 3d 1022, 1031 (1993). A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based upon the evidence. *Rhodes v. Illinois Central Golf R.R.*, 172 Ill. 2d 213, 242 (1996).

■ After a careful examination of the record, we conclude that the trial court's custody determination was not against the manifest weight of the evidence. The trial court gave careful consideration to each of the factors enumerated in section 602(a). In particular, respondent's assertions that the trial court did not consider the wishes of the children simply are not supported by the record. The trial court heard the testimony from Dr. Dres, the court-appointed conciliator, and Dr. Bonkowski, the children's therapist, that the children showed a preference to live with their father. However, the court also heard the testimony of Dorothy Korstad and David Winthers, the court-appointed guardians *ad litem* (GALs). Winthers' report indicated that the oldest child lacked credibility. Both GALs believed that the children's wishes to live with their father were "obviously programmed" and that they were influenced by their father. Given these facts, we cannot say that it was unreasonable for the trial court to weigh the expert opinions and to conclude that any statements made by the children were unreliable.

Nor can we find that it was unreasonable for the trial court to conclude that the custody of the children should be awarded to petitioner. The court was aware that petitioner had problems with the children and was in need of anger control counseling. While the court had concerns about petitioner's credibility, it also had serious concerns and questions about respondent's credibility. The court noted that respondent persisted in having Eva Sawicki, his friend with whom he lived, present during visitations, in violation of court orders. The court also noted that respondent misstated his earnings, gave conflicting testimony relative to the operation of his businesses, and showed an "unending unwillingness to comply with court orders." The court stated, "All in all, this entire case does not present a pretty

picture in terms of the custody of these children. In many respects the Court is forced to choose between the lesser of two problematic situations." Nevertheless, it was clear to the court that the children were adjusting well to school and other activities while in their mother's care. Given the expert testimony and documents bearing upon the custody of the children and considering the testimony of the parties, including their temperaments, personalities, and capabilities, the trial court's decision was not against the manifest weight of the evidence.

■ Respondent next argues that the trial court erred in allowing the GALs to listen to telephone conversations between respondent and his children that were recorded by petitioner. Respondent alleges that the recordings violated the eavesdropping statutes (720 ILCS 5/14—1 et seq. (West 1996)). Respondent contends that, although the trial court properly barred the tapes from being admitted as evidence, the tapes were nevertheless effectively used as evidence, because the trial court allowed the GALs to use those tapes to formulate their recommendations to the court. Respondent asserts that allowing the GALs to use the allegedly illegally obtained tapes prejudiced him.

Prior to trial, the trial court appointed Winthers as GAL for the oldest child, C., for the limited purpose of determining if she should testify at trial. Previously, petitioner recorded some of respondent's telephone conversations with his daughters. C. apparently told Winthers about the recordings made by petitioner of telephone conversations between respondent and the children and gave Winthers permission to listen to them. Thereafter, respondent filed a motion to bar the use of the recorded conversations. Respondent argued that the eavesdropping statute barred their use as evidence (720 ILCS 5/14—5 (West 1996)). The trial court ordered that no information derived from the tapes was to be used in any way as evidence at trial and allowed Winthers to listen to the tapes.

In his report, Winthers noted that, while the tapes did play a role in formulating his report, he maintained the confidentiality of the contents because of the court order barring the contents of the tapes as evidence. After interviewing C., reviewing Dr. Dres' conciliation report, listening to three of the tapes, and interviewing respondent and one of C.'s sisters, Winthers seriously doubted C.'s reliability in accurately reporting facts to the trial court. He observed that much of the information C. knew about the divorce was received directly from her father and that she seemed to be "programmed." Winthers felt that versions of certain incidents that C. discussed with Winthers were markedly different from the taped version. During his second

interview with C., he received quite different and more detailed facts concerning incidents previously discussed. He concluded that C. should not be permitted to have an *in camera* interview with the trial court.

After Winthers was dismissed, the court appointed Korstad to be the GAL for the children during the custody hearing. She requested permission to listen to the tapes. Korstad felt that, if the children were being subjected to manipulation or undue influence and if their credibility was in issue, it would be in the best interests of the children to investigate this matter to the fullest extent. The trial court granted her request, stating:

> "I think there is a fundamental difference between something being admitted into evidence as direct evidence and the GAL having access to information which may or may not be the basis of any opinion that the GAL ultimately renders. Obviously, people like conciliators, experts, GALs obtain information in a lot of different places which may or may not of its own be admissible directly into court.
>
> I think she would be subject to cross examination with regard to any bias or how much weight she gave to any particular basis for any opinion, but I don't think that the record in this trial would be tainted at this point in time by allowing Miss Korstad access to these two tapes."

The trial court also allowed respondent's counsel access to the tapes if she so requested. Respondent's counsel did not want to listen to the tapes and there is no evidence that she requested to do so. Korstad did not mention the tapes in her report, nor did respondent point to testimony at trial in which the tapes were discussed. Thus, there is no indication in the record that the tapes or their contents were used as evidence at trial.

We first note that respondent assumes that the tapes were recorded in violation of the eavesdropping statutes. He cites *Fears v. Fears*, 5 Ill. App. 3d 610 (1972), and the eavesdropping statutes for the proposition that evidence obtained in violation of those statutes should not be admitted or relied upon at trial. Further, petitioner argues that the recordings did not violate those statutes and therefore the trial court improperly barred the tapes from being used as evidence at trial. We find these arguments irrelevant here because, regardless of a violation, neither the tapes nor their contents were used as evidence at trial or relied on by the trial court. Moreover, as petitioner admits, she was not harmed by the trial court's ruling since she prevailed on the custody issue.

Even assuming *arguendo* that the trial court relied on the tapes;

we fail to find any prejudice. The trial court based its finding on the expert testimony and documents as well as the testimony of the parties, including their temperaments, personalities, and capabilities. Respondent has merely asserted the existence of prejudice without demonstrating how he was prejudiced.

Further, if the contents of the tapes were so inflammatory as to bias the GALs, respondent could have cross-examined the GALs. Contrary to respondent's assertion that the cross-examination of the GALs concerning their personal bias would be impossible, respondent could have made an offer of proof and introduced the tapes for the limited purpose of proving bias. Such an offer would have allowed this court the opportunity to assess any prejudice allegedly arising from the tapes. Regardless, respondent chose not to listen to the tapes, even though he was a party to the taped conversations, and made no request to cross-examine the GALs. He merely argued that the eavesdropping statutes render such material inadmissible. Because he failed to act, he cannot now complain that he was prejudiced. See *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 734 (1996).

Respondent also appears to argue that because the tapes were obtained in violation of the eavesdropping statutes no one should be allowed access to them. However, this argument also is not pertinent to the issue here. We are not concerned with whether the GALs are liable for listening to the tapes.

To the extent respondent asserts that the GALs cannot consider inadmissible evidence in forming their opinions, his argument is baseless. Section 506 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/506 (West 1996)) requires the GAL to defend and protect the best interest of the child whom he or she represents. In discharging his or her duty, the GAL will review or consider all kinds of information regarding the child, both admissible and inadmissible at trial. Such information assists the GAL in determining the existence of problems that might cause the child psychological or physical harm. We fail to see any prejudice where the GAL listens to information that may be inadmissible at trial. Compelling reasons of public policy dictate that the GAL perform duties essential to the health and welfare of the child whom the GAL represents. See *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994). Paramount among these is the GAL's duty to ascertain and defend the child's best interests. Reviewing the tapes materially advanced the GALs' ability to determine and defend the children's interests here. Accordingly, we find that the trial court did not err in allowing the GALs to listen to the tapes.

Respondent last contends that the trial court erred in awarding $800 per month in child support. Respondent argues that the evidence did not show his annual income was $40,000. Respondent further maintains that the trial court erroneously failed to deduct social security dependency disability benefits as well as taxes, insurance premiums, and union dues from his gross income as required under section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a) (West 1996)). Petitioner counters that it was unreasonable for the trial court to set respondent's income at $40,000 and that his income should have been set at $110,000.

■ Section 505(a) sets forth a number of relevant factors to be considered by the court in determining child support. 750 ILCS 5/505(a) (West 1996). The amount of an award of child support is within the trial court's discretion and will not be disturbed on appeal absent abuse of that discretion. *In re Marriage of Clabault*, 249 Ill. App. 3d 641, 651 (1993).

As a prerequisite to determining child support, the trial court must first determine the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 1996). If the present net income is difficult to ascertain or uncertain, a court may consider past earnings. *In re Marriage of Olson*, 223 Ill. App. 3d 636, 652 (1992). The credibility and forthrightness of the noncustodial parent in disclosing income is a factor to be considered in accepting evidence of net income. *Olson*, 223 Ill. App. 3d at 652.

■ The evidence reveals that respondent's income tax returns showed that respondent earned $11,000 in 1993 and less than $15,000 in 1994. Respondent also testified at trial that he earned no money from Christina's, one of his family-owned restaurants, and that his only source of income is from monthly social security disability payments.

There was also evidence that respondent may have earned more than the income reflected by his testimony. Respondent purchased a conversion van for $30,618 in 1995. Further evidence showed that respondent stated his income to be $110,000 on the credit application for the van. Moreover, contrary to respondent's testimony that total sales from Christina's were only $13,000 as of June 16, 1996, there is evidence that Christina's realized total sales of $79,137 as of that date. We agree with the trial court that it was difficult to ascertain the exact amount of respondent's income where respondent's financial statements appeared to misstate his earnings and where there was conflicting testimony regarding the income derived from his businesses. Under the circumstances, we find that the trial court's assessment of respondent's income was reasonable.

We note that petitioner did not cross-appeal from the award of child support, and therefore she cannot argue that the trial court should have assessed respondent's income at $110,000. In any event, the trial court is in a better position to accept or reject evidence of net income. We find that the trial court did not abuse its discretion in finding that respondent's net income was at least $40,000.

As to respondent's contention regarding the trial court's failure to make appropriate deductions, the trial court stated that it reached a net income amount of $40,000 after applying the statutory guidelines "relative to appropriate deductions for purposes of determining net figures as well as the thirty-two percent guideline for three minor children." The trial court properly considered the guidelines under section 505(a) and made the appropriate deductions in determining respondent's net income. Accordingly, we do not find that the trial court abused its discretion in awarding $800 per month in child support.

For the foregoing reasons, the decision of the trial court of Du Page County is affirmed.

Affirmed.

BOWMAN and DOYLE, JJ., concur.