**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200543-U

Order filed February 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| ELI WHITE, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-20-0543 |
| and | ) | Circuit No. 16-D-214 |
| | ) | |
| SARAH N. WHITE, | ) | |
| | ) | Honorable Elizabeth Hoskins Dow, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The circuit court did not abuse its discretion in denying respondent's motion *in limine* seeking to prevent the testimony of the parenting coordinator and guardian *ad litem*. (2) The order modifying the custody arrangement was not against the manifest weight of the evidence.

¶ 2    Petitioner, Eli White, and respondent, Sarah N. White, had one child during their marriage, C.W., born in November 2014. The circuit court ordered a judgment of dissolution of marriage in December 2016. Incorporated within the dissolution judgment is a parenting plan and allocation

of parental responsibilities. Subsequent to Eli's filing of a motion to modify the custodial arrangement in February 2019, the court appointed a guardian *ad litem* (GAL) and a therapist for C.W., as well as a coparenting therapist for Eli and Sarah. The court later appointed the co-parenting therapist as the parenting coordinator. Eli and Sarah executed agreed orders allowing the GAL and coparenting therapist access to C.W.'s therapist and the corresponding records. Prior to the hearing on the motion to modify, Sarah filed a motion *in limine* asking the court to bar the testimony of the GAL and the parenting coordinator on the basis that the parenting coordinator had been the parenting therapist, and both the parenting coordinator and the GAL spoke with C.W.'s therapist and reviewed the therapist's records in violation of section 607.6(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607.6 (d) (West 2020)). The court denied the motion and following the hearing modified the custody arrangement. Sarah appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        During the parties' marriage, they had one child C.W. The circuit court entered an order of dissolution of marriage containing a parenting plan and an allocation of parental responsibilities in December 2016. In February 2019, Eli filed a "Motion to Modify Designation of Parent with a Majority of Parenting Time and Other Relief," as well as a motion seeking the appointment of a GAL. The circuit court appointed Emily Shaughnessy as the GAL for C.W. The court held a hearing on Eli's motion.

¶ 5        Counsel for Eli called Sarah to testify. Sarah testified on numerous topics, including the difficulties she and Eli experienced while coparenting and the "tantrums" C.W. would have when required to go to Eli's house. The court intervened in the direct examination at one point to ask Sarah why she was advocating for a right of first refusal that would result in more transitions

facilitating the possibility of more "tantrums." Sarah stated that the child wanted to spend the extra time with her. Sarah's testimony continued until the court stopped the proceedings and asked counsel for both sides to meet in the hallway. Upon returning, the court made recommendations concerning therapy and parenting time such as temporarily removing the right of first refusal. The court then continued the hearing to a later date.

¶ 6 A few days after continuing the hearing, the court entered an agreed order temporarily revising the parenting plan. Under the temporary schedule, the parties enjoyed alternating weekends and rotated custody of the child every other day. The right of first refusal was eliminated. The circuit court appointed Whitney McDaniel as coparenting therapist. The court also appointed Jennifer Planning as the therapist for C.W. The court subsequently appointed McDaniel as the parenting coordinator.

¶ 7 In total, there are three agreed orders of note. The August 30, 2019, agreed order provided that "Parties shall execute necessary consents for [GAL] to have access to [Planning] and her records[,]" and that "Planning will have consent to communicate with [McDaniel], parties to execute necessary authorizations." The October 24, 2019, agreed order provided that "The parties shall execute necessary consents for [GAL] to have access to [Planning] and her records. [Planning] shall have consent to communicate with [McDaniel] and the [GAL]." The March 16, 2020, agreed order provided that "Each party is ordered to ensure that the Parenting Coordinator may meet and/or confer with the children or their therapist at reasonable times and places, as the Parenting Coordinator deems appropriate." Further, that "any conversations with or materials provided to the Parenting Coordinator are not deemed to be confidential. The Parenting Coordinator may be called to testify at hearing, deposition and/or trial." In sum, Eli and Sarah entered a number of agreed orders allowing the GAL to have access to McDaniel and her records,

as well as allowing the GAL and McDaniel to have access to Planning and her records and allowing McDaniel to testify.

¶ 8    In the interim, Eli filed a petition to enforce the parenting schedule recommendation of the parenting coordinator. The coordinator recommended a "2-2-5" schedule where Eli would have the child on Monday and Tuesday and Sarah would have the child on Wednesday and Thursday. The parties exchanged every other weekend from Friday after school until Monday at drop-off at the school. The court granted Eli's motion and modified the parenting time accordingly.

¶ 9    In July 2020, Sarah filed a motion *in limine* arguing that the testimony of the GAL and McDaniel should be barred. Sarah relied on section 607.6(d) of the Act that stated, "All counseling sessions shall be confidential. The communications in counseling shall not be used in any manner in litigation nor relied upon by any expert appointed by the court or retained by any party." 750 ILCS 5/607.6(d) (West 2020). The court denied the motion *in limine* finding that Sarah waived the challenge based on the prior agreed orders.

¶ 10    The hearing resumed in September 2020. The GAL testified that in her discussions with C.W.'s therapist concerning his best interests, the "tremendous" amount of back and forth between the households in the previous parenting plans and the negative impact it had on the child was a paramount concern. Due to the structure of the initial parenting plan, the child did not have lengthy periods of time where he was at one home. The GAL believed that the parties were unable to sufficiently work together to make a right of first refusal work. The GAL recommended the schedule that was currently in place: Monday, Tuesday with Eli; Wednesday, Thursday with Sarah; alternating weekends; and no right of first refusal.

¶ 11    McDaniel testified that she is licensed as a clinical professional counselor. Her role in this case initially began as a coparenting therapist, tasked with improving communication among the

parties and reaching an understanding on parenting time. McDaniel's progress in resolving those issues was minimal. The parties became frustrated causing McDaniel to ask for permission to contact the parties' attorneys and the GAL to find a path through the impasse.

¶ 12 She believed the transition to a parenting coordinator was necessary because "the parties were going in circles." As a parenting coordinator, she could make recommendations. She discussed transitioning from parenting therapist to parenting coordinator with the parties and they both agreed to that change. While acting as parenting coordinator, she, again, received permission to reach out to the parties' attorneys due to an impasse on the parenting schedule. As a result of the conversation between the attorneys and the GAL, she collaborated with the child's therapist regarding transitions and made recommendations to the parties on the parenting time schedule. McDaniel recommended the parenting schedule that was currently in place. Her goal was to minimize transitions as that was the main complaint from the parties, as well as a major concern of the child's therapist.

¶ 13 Sarah testified that she lived in her current residence for the past 10 years and C.W. has always resided in her home. She and C.W. share a close relationship and he struggles being away from her. Sarah wanted each parent to attend school functions. She sets and keeps the medical appointments for C.W. She also wanted a right of first refusal during the summer because she does not work summers, C.W. is extremely close to her, and he prefers to spend time in her care. She previously enjoyed the right of first refusal with C.W. and the child enjoyed the extra time with her. Sarah requested that the two-week extended parenting time during the summer be non-consecutive as C.W. struggles while away from her for too long. As opposed to her previous testimony, C.W. no longer struggled with transitions between the parent's residences.

¶ 14    Eli testified that he lives with his current wife and their two children. He works from 7 a.m. until 3:30 p.m. during the school year and from 6 a.m. until 2:30 p.m. in the summer, but his schedule is flexible as long as he is able to work eight hours during the day. Eli testified that he accepted the current schedule that both the GAL and parenting coordinator recommended. He believed that the schedule should also be used during the summer months because "there has been a plethora of back and forth throughout his life, and he does not do well with it." When asked about C.W.'s tantrums as described by Sarah, Eli stated, "I have no clue what [Sarah] is talking about." Eli generally denied the existence of C.W.'s behavioral issues as described by Sarah. He also stated that Sarah never spoke with him about the alleged tantrums. Eli wanted C.W. to be able to attend the birthday celebrations of his siblings. When asked about whether he thought there should be a right of first refusal, Eli did not believe it would be appropriate as "[i]t causes problems."

¶ 15    The circuit court entered an order permanently modifying the custody arrangement. Of note, the order permanently removed the right of first refusal; continued Eli's mid-week parenting time with C.W. from Monday after school until Wednesday morning; required C.W. to attend "Significant Family Events and Celebrations;" required Eli and Sarah to alternate volunteer opportunities at C.W.'s school; and made the parties' two-week extended parenting time non-consecutive.

¶ 16    Sarah appeals.

¶ 17                                II. ANALYSIS

¶ 18    Sarah argues that the lower court erred in denying her motion *in limine*. She also argues that the decision modifying the custody arrangement was against the manifest weight of the evidence.

¶ 19                           A. Motion *in Limine*

¶ 20    " 'Generally, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion, and reviewing courts will not disturb a trial court's evidentiary ruling absent an abuse of discretion.' " *People v. Way*, 2017 IL 120023, ¶ 18 (quoting *People v. Harvey*, 211 Ill. 2d 368, 392 (2004)). To the extent the ruling on a motion *in limine* finds its basis in an interpretation of law, our review is *de novo. Id.* We may affirm for any reason apparent from the record, regardless of the lower court's reasoning. *People v. Tondini*, 2019 IL App (3d) 170370, ¶ 25.

¶ 21    Sarah contends that the plain language of section 607.6(d) of the Act (750 ILCS 5/607.6(d) (West 2020)) prevents waiver of confidentiality in counseling sessions and prohibits information gleaned from C.W.'s therapist and McDaniel as the coparenting therapist to be used at trial. The statute allows a court, under certain circumstances, to order individual counseling for the child, family counseling for one or more of the parties and the child, or parental education for one or more of the parties. *Id.* § 607.6(a). The statute also provides that "[a]ll counseling sessions shall be confidential" and "shall not be used in any manner in litigation nor relied upon by any expert appointed by the court or retained by any party.[1]" *Id.* § 607.6(d).

¶ 22    Sarah disagrees with the lower court's finding that she waived a challenge to the complained of error via the agreed orders wherein she unambiguously allowed the transfer of information between C.W.'s therapist, the coparenting therapist, the parenting coordinator, and the GAL. She argues that since her counsel objected to the testimony of the GAL and McDaniel prior to the hearing, the invited error doctrine has no application.

_____

[1] While this case was pending on appeal, the legislature amended section 5/607(d) of the Act providing that "[c]ounseling ordered under this Section is subject to the Mental Health and Developmental Disabilities Confidentiality Act and the federal Health Insurance Portability and Accountability Act of 1996." Pub. Act 102-349, § 5 (eff. Aug. 13, 2021) (amending 750 ILCS 5/607.6).

¶ 23 Eli responds that section 607.6(d) of the Act (*id.* § 607.6(d)) conflicts with Illinois Supreme Court Rule 907 (eff. Mar. 8, 2016). Pursuant to the separation of powers principle, the supreme court rule controls and the lower court properly allowed the GAL to testify. Eli also directs this court's attention to The Illinois Health and Developmental Disability Confidentiality Act (740 ILCS 110/4(a)(5) (West 2020)) that allows the parents of a minor child under 12 to provide materials concerning the child to third parties. Next, Eli argues that any error committed in the lower court was invited error pursuant to the agreed orders. Finally, he argues that any error below was harmless as the information gained from the child's therapist was also procured directly from the child or the parties and Sarah experienced no prejudice.

¶ 24 The lower court did not err in denying Sarah's motion *in limine*. We need not engage in statutory construction nor consider whether the restrictions set forth in the statute run afoul of the separation of powers principle. Rather, we find that Sarah invited the error she complains of on appeal. Therefore, she is barred from pointing to those errors as a basis for relief.

¶ 25 The rule of invited error, also described as acquiescence or estoppel, is a procedural default whereby a party cannot complain of error that the party induced the court to make or to which that party consented. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 33; *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). The rationale behind this doctrine is that it would be manifestly unfair to allow a party a second bite at the apple on the basis of error that the party injected into the proceedings. *Id.*

¶ 26 A review of the agreed orders in this matter evidence that Sarah agreed to the communications and sharing of documents between the GAL, C.W.'s therapist, and parenting coordinator. The agreed orders are specific and unambiguous concerning the consent of the parties for these court-appointed individuals to collaborate. Further, the parties explicitly agreed that

McDaniel could be called to testify. McDaniel's testimony reveals that the parties agreed that she should transition from a coparenting therapist to a parenting coordinator in this matter.

¶ 27    Pointing to *People v. Cox*, 2017 IL App (1st) 151536, ¶ 74, Sarah claims that the invited error doctrine is inapplicable because of the motion *in limine* challenging the testimony prior to the hearing. This claim is unpersuasive. As laid out, all of the individuals appointed by the court were aware that Eli and Sarah consented to communication and document sharing among the individuals. They acted accordingly. With this permission, the GAL in this case performed her mandated function as the eyes and ears of the court and sought out all relevant documents and information relating to the best interest of C.W. See *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 51; see also Ill. S. Ct. R. 907 (eff. Mar. 8, 2016) (noting a GAL "shall also take whatever reasonable steps are necessary to obtain all information pertaining to issues affecting the child, including interviewing family members and others possessing special knowledge of the child's circumstances"). McDaniel, with the same permission, sought out information from the child's therapist. McDaniel received the blessing of the parties to become the parenting coordinator. Eli and Sarah agreed months beforehand that McDaniel would be available to testify at the hearing.

¶ 28    Once the agreed orders were entered and the court-appointed GAL and parenting coordinator began performing their functions with the permissions granted by the parties, the bell could not be un-rung. For Sarah to argue before the hearing, months after the agreed orders, that the GAL and parenting coordinator were barred from testifying fails to render the invited error doctrine inapplicable. Additionally, Sarah testified, before the hearing was continued, that she had no objection to Planning speaking to McDaniel. The lower court properly found Sarah waived her argument on this point.

¶ 29    Even in the absence of the agreed orders, any error in allowing the GAL to testify after communicating with the child's therapist and McDaniel following her previous role as coparenting therapist was harmless error. See *Lindroth v. Walgreen Co.*, 407 Ill. 121, 136 (1950) ("A judgment will not be reversed for error unless it appears such error affected the outcome below."). The information gleaned from the child's therapist that the GAL pointed to as shaping her opinions and recommendations revolved around the fact that the child did not do well with transitions and that the back forth between households was detrimental. This was a fact known to all and expressed to the GAL by the parties, as well as the child. The parties told McDaniel that the back forth was detrimental and even without her time as coparenting therapist would have identified that transitions were an issue. McDaniel's testimony revolved around the parties' inability to reach agreements regarding the parenting schedule and was essentially the same as the GAL's. Any error was harmless.

¶ 30    Sarah also points to *In re Marriage of Iqbal & Khan*, 2014 IL App (2d) 131306, that in turn states "[p]arents 'are not at liberty to make agreements which affect the interests of their children without obtaining the approval of the court.' " *Id.* ¶ 36 (quoting *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 689 (1994)). *Iqbal* is of little use in this matter, as the consents at issue were in agreed orders approved by the court. Accordingly, the lower court did not err.

¶ 31                                B. Modification

¶ 32    Sarah goes on to argue the court's order (1) prohibiting Eli and Sarah to attend the same events at C.W.'s school; (2) making the parties' two-week extended parenting time non-consecutive; (3) granting Eli mid-week parenting time with C.W. from Monday after school until Wednesday morning; (4) removing the right of first refusal; and (5) requiring C.W. to attend "Significant Family Events and Celebrations" are against the manifest weight of the evidence. She

also contends the lower court should have drawn an adverse inference against Eli owing to the fact his current wife failed to testify at the hearing.

¶ 33     We review custody modification judgments to determine whether the modification is against the manifest weight of the evidence. *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). A custody determination is afforded great deference as the trial court is in the best position to make credibility determinations, as well as determine the best interests of the child. *In re Custody of Sussenbach*, 108 Ill. 2d 489, 499 (1985). In reviewing whether a judgment is contrary to the manifest weight of the evidence, we view the evidence in the light most favorable to the appellee. *Bates*, 212 Ill. 2d at 516. Where the evidence permits multiple inferences, we will accept those that support the lower court's order. *Id.*

¶ 34     The manifest weight of the evidence supports the lower court's order. We first dispose of Sarah's claim of error regarding the lower court's prohibition on her attendance at school events when Eli is present. A review of the modification order reveals no such requirement.

¶ 35     Next, Sarah asserts the court erred in making the two-week extended parenting time non-consecutive. This claim is as equally befuddling as the previous assertion of error, in light of the following discourse during the hearing below:

> "MICHAEL CHIERO: [(Sarah's Attorney)] And in terms of the weeks, the extended parenting time weeks that you have mentioned to the [c]ourt, you mentioned two weeks, do you believe the weeks should be consecutive or non consecutive.
>
> SARAH WHITE: Non consecutive.
>
> CHIERO: And why do you believe non consecutive weeks should be appropriate?

- 11 -

SARAH: Just the length of time. I mean, 14 days is a long time."

This portion of the record is cited by Sarah in her briefing as support for the contention that the lower court erred.

¶ 36       Aside from being disingenuous, Sarah's argument on this point demands the application of judicial estoppel. See *Seymour v. Collins*, 2015 IL 118432, ¶ 36 (noting the recognized purpose of judicial estoppel is to protect the integrity of the judicial process by preventing parties from deliberately changing positions according to the exigencies of the moment).

¶ 37       Sarah also argues the lower court erred by refusing to end Eli's midweek parenting time on Tuesday evenings. The GAL testified that she supported a "fifty-fifty" parenting schedule. She interviewed C.W. prior to the hearing and noted the child was doing "really well" with the new schedule, and that C.W. "loves" the schedule that the court ultimately implemented. The GAL recommended the parenting plan that was implemented. McDaniel also recommended the parenting plan that was implemented. There is no evidence supporting the argument that the court's order of Tuesday visitation for Eli is against the manifest weight of the evidence.

¶ 38       Sarah also assigns error to the court's removal of her right of first refusal. Sarah testified that transitions were a problem. She claimed that C.W. would have violent tantrums when required to go to Eli's house. The lower court directly questioned Sarah that if these tantrums were the result of transitions between households, then why would it be in the child's best interest for there to be a right of first refusal, thereby facilitating more violent tantrums? Sarah did not waiver in her request for the right of first refusal, insisting it was in the child's best interest to spend as much time as possible with her. None of the other court-appointed individuals nor the father witnessed these tantrums. After the continuance, Sarah testified that the tantrums had ceased. Eli testified C.W. did not do well with all the back and forth that was taking place between the two households.

The GAL testified that C.W. explained he did not like moving back and forth between households. Further, the GAL did not believe the parties could make the right of first refusal work. C.W.'s therapist expressed to the GAL that C.W. was "struggling" with moving between the households on the frequent basis that the prior parenting plan required. McDaniel testified that the main complaint from both parties revolved around exchanges of the child. As the circuit court pointed out, due to the deleterious impact the transitions were having on the child, fewer exchanges are in C.W.'s best interest. It is apparent the right of first refusal is not in C.W.'s best interests based on the record.

¶ 39    Next, Sarah takes issue with the requirement that C.W. attend "special events" that *may* interfere with her parenting time. While Sarah claims this portion of the order is error, she fails to provide even a scintilla of support for this argument. She fails to point to portions of the record that provide evidence this ruling is in opposition to the manifest weight. Sarah also fails to provide citation to authority supporting her assertion. This court "is not a repository into which an appellant may foist the burden of argument and research." *Ramos v. Kewanee Hospital,* 2013 IL App (3d) 120001, ¶ 37. As a result, she has forfeited this argument. See Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) (stating appellant's brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on.").

¶ 40    Sarah directs this court's attention to *Virgin*, 2021 IL App (3d) 190650, ¶ 45, for the proposition that it is an abuse of discretion to award equal parenting time when the "parents have too much animosity to cooperate." *Virgin* offers Sarah no relief and is distinguishable from the case at bar. In *Virgin*, the GAL testified that the case was one of the highest conflict cases he had ever seen in his experience as a GAL and attorney. *Id.* ¶ 49. There were approximately six orders

of protection, multiple Department of Children and Family Services investigations, criminal proceedings, and mutual restraining orders. *Id.* The GAL in that case also described the communication between the parties as unproductive. *Id.* The *Virgin* court found the GAL testimony supported by the record. *Id.* Those facts cited above are absent from this matter. Further, "where the record shows that the parties are reasonably loving and capable parents who are sufficiently able to cooperate even though each party attempted to prove the other was less capable, the 50/50 arrangement *could be* upheld." (Emphasis in original.) *Id.* ¶ 47. Based on the record, we believe Sarah and Eli are sufficiently able to cooperate to the extent that the current arrangement is not error.

¶ 41    Finally, Sarah directs this court's attention to *In re Marriage of Quindry*, 223 Ill. App. 3d 735 (1992), arguing the lower court should have assigned a negative inference against Eli because he failed to call his new spouse to testify as to her interaction and relationship with C.W. We disagree. The lower court was not required to draw this inference. *Quindry* stands for the proposition that a lower court may draw this inference, not that it must. Furthermore, *Quindry,* is distinguishable wherein that case the mother departed covertly from the marital home without telling the father where the child could be reached. On appeal, error was not assigned to the trial court for drawing an adverse inference from the mother's new paramour's failure to testify. The facts here are different from those in *Quindry*. Moreover, this argument was not raised below.

¶ 42    Accordingly, the circuit court did not err.

¶ 43                                III. CONCLUSION

¶ 44    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 45    Affirmed.